Jorge Lorenzo AMORES, Appellant,

v.

The STATE of Texas, Appellee.

No. 0795–89.

Court of Criminal Appeals of Texas,
En Banc.

Sept. 18, 1991.

**409**

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MALONEY, Judge.

Appellant was convicted by a jury of aggravated possession of more than four hundred grams of cocaine with intent to deliver. TEX.REV.CIV.STAT. Art. 4476–15 § 4.03.[1] The jury assessed punishment at thirty-five years' confinement in the Texas Department of Criminal Justice, Institutional Division, and a $250,000 fine. The Dallas Court of Appeals affirmed appellant's conviction in an unpublished opinion. *Amores v. State*, No. 05–88–0117–CR (Tex. App.—Dallas, March 16, 1989). We granted the appellant's petition for discretionary review to determine whether the court of appeals erred in holding that evidence was legally seized from appellant within the proper scope of a search incident to a valid investigative detention.[2] We will reverse the judgment of the court of appeals.

### I.

At 11:30 a.m. on June 16, 1986, Willetta Stellmacher, owner and manager of the Square Apartments in Dallas, observed an "unkept [sic] black male" drive a 1975 Chevrolet "junk car" into the parking lot of her apartment complex. The man, later identified as appellant, parked the car, got out and opened the trunk. Stellmacher, who noticed that appellant was not a tenant of the complex, immediately ran inside her apartment and called the police to report a "burglary in progress" by a "black man" at the Square Apartments. Stellmacher reported no further details at that time.

Stellmacher then retrieved a handgun from her apartment and watched appellant as he took a large brown box out of the trunk of the Chevrolet, walked the length of the parking lot, opened the trunk of a 1980 Oldsmobile with Florida license plates and placed the box inside the trunk. The Oldsmobile was the only other car on the parking lot and was backed into a parking space at the far end of the lot. Stellmacher testified that the standard lease for her

John H. Hagler, Dallas, Howard Sohn, Miami, Fla., for appellant.

John Vance, Dist. Atty., Robert P. Abbott and Mark Hasse, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

1. Repealed and recodified as TEX. HEALTH & SAFETY CODE § 481.112 (1989).

2. TEX.R.APP.P. 200(c)(3).

complex contained a provision prohibiting tenants from backing their cars into their parking spaces, as this method was commonly used by burglars. According to Stellmacher, she could not see the contents of the box and did not know if the box belonged to any of her tenants. She testified that, when she saw appellant get the box out of the car, she briefly considered that he might be making a delivery.

Officer Henry Jachna of the Dallas Police Department was patrolling a few blocks away when he received a radio call for a "burglary in progress" at the Square Apartments involving a "black male" putting something in the trunk of a car. Jachna testified that no other details were provided in the police broadcast. Jachna arrived at the scene within one minute after receiving the call and observed appellant sitting in the driver's seat of the Oldsmobile. Jachna testified that he knew no "blacks" lived at the Square Apartments at this time. Jachna pulled his patrol car into the parking lot, and appellant began to drive the Oldsmobile out of the parking space.

Jachna blocked the Oldsmobile with his patrol car, got out of the car, pulled out his revolver and ordered appellant out of his car. After hesitating a few seconds, appellant complied with Jachna's orders and got out of the car slowly with his hands raised. Stellmacher testified that she was running towards that end of the parking lot at this point, gun in hand, yelling "Get him! ... That's him!," but Officer Jachna testified that he did not recall her making these statements and did not recall her presence on the scene at this point.

Once appellant was out of his car, Jachna ordered him to lie face down on the parking lot with his hands behind him. Jachna held his gun to appellant and told him, "If you don't do what I tell you to do, I'm gonna shoot you." Stellmacher testified that she added, "If he doesn't, I will." With his gun

still out, Jachna gave appellant a quick "patdown." He found no weapons on appellant. Jachna then made a visual inspection of the front seat of the Oldsmobile and found nothing. He testified that he saw no implements of a burglary inside of the car. Jachna testified that at this point he was conducting an investigative detention only, and that appellant was not under arrest and would be free to leave if nothing more developed. Jachna then checked the front seat of the Oldsmobile again. He noticed a blue "gym type bag" under the front seat. Jachna put his hand on the bag under the seat and felt "some type of metal object that could have been a weapon."

Officer Christy Carmell, the first "backup" to respond, arrived as Jachna was removing the blue bag from the Oldsmobile. Appellant had already been handcuffed by this time and was still lying face-down on the pavement, although the testimony differed as to precisely when the handcuffing occurred.[3] Carmel held appellant at gunpoint while Jachna holstered his weapon, unzipped the blue bag and discovered a "Mack 10 gun," an Intratec, 9mm Luger. Jachna testified that he considered appellant to be under arrest at this point.

Jachna then took the keys out of the Oldsmobile and opened the trunk. During a complete search of the trunk, Jachna seized a cardboard box containing several bags of cocaine of various purities and a scale. At this point, Jachna finally stopped to talk with Stellmacher, who had left the parking lot after Carmell arrived and returned after Jachna completed his search of the Oldsmobile. Stellmacher informed him that appellant arrived in the Chevrolet. Jachna obtained the keys from appellant's pocket and proceeded to search the second car. He located and seized additional packets of cocaine from the Chevrolet. In all, Jachna seized approximately 1032 grams of cocaine (including adulterants), a scale, $668 in cash, and the gun.

3. Stellmacher testified that Officer Jachna handcuffed the appellant immediately after ordering him out of the vehicle. Jachna testified that he could not remember exactly when he handcuffed the appellant, but acknowledged that he was handcuffed at or near the time the backup arrived. Jachna did not specify whether the handcuffing occurred before or after he actually found the weapon. Because of the discrepancy in the testimony, we note that our decision in this case is the same regardless of when the handcuffing occurred.

At the pretrial suppression hearing, appellant moved to exclude the items seized at the time of his arrest on the basis that the evidence was seized in violation of the Fourth and Fourteenth Amendments to the United States Constitution and Article 1, Section 9 of the Texas Constitution. Jachna and Stellmacher were the only witnesses who testified at the hearing. The trial court denied appellant's motion to suppress the evidence.

The court of appeals affirmed appellant's conviction, holding that the initial stop by Jachna was a valid investigative detention. The court concluded that once appellant was stopped, Jachna was justified in believing that he was in danger and had "reasonable grounds to feel under the driver's seat for weapons." The court further found that a limited search of appellant's car was within the permissible scope of a search incident to an investigative detention, and that once the search produced a prohibited weapon, appellant was subject to a warrantless arrest for an offense committed in Jachna's presence. The court concluded that the cocaine was seized in a legal inventory search of appellant's impounded automobiles.[4]

Appellant contends that the search and seizure was premised on a warrantless arrest made without probable cause, and not an investigative detention. Alternatively, he argues that the scope of the search exceeded that permissible in the course of a valid investigative detention. The State does not argue that the search was incident to a legal arrest. Rather, the state has argued throughout, to the trial court, the court of appeals and this Court, that the search and seizure was premised on a valid investigative detention.

## II.

■ The threshold issue is whether the court of appeals correctly characterized the detention of appellant as an investigative detention rather than an arrest, because the nature of the detention determines the constitutional parameters which apply to determine its legality. An investigative detention, to be constitutionally valid, may be founded upon a reasonable, articulable suspicion that the person detained is connected with criminal activity, *see Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968),[5] but an arrest, to pass constitutional muster, must be supported by the greater conclusiveness of probable cause to believe that a particular person has committed or is committing an offense.[6]

■ We find that the initial detention in this case was in fact an arrest. An arrest occurs when a person's liberty of movement is restricted or restrained. *Hoag v. State,* 728 S.W.2d 375, 379 (Tex.Cr. App.1987) (citing *Brewster v. State,* 606 S.W.2d 325 (Tex.Cr.App.1980) and *Hardinge v. State,* 500 S.W.2d 870 (Tex.Cr. App.1973)). Article 15.22, V.A.C.C.P., provides that "a person is arrested when he has been actually placed under restraint." Here, the police officer blocked the appellant's car in the parking lot, drew his service revolver, ordered the appellant from his car at gunpoint, ordered him to lie facedown on the pavement with his hands behind his back, and told him he would be

---

4. In its opinion, the court of appeals did not specify whether its holding was based on state or federal grounds; cases relying on both state and federal law are cited by the court of appeals.

5. Specifically, the information which officers must have in order to justify a *Terry*-type stop is "specific articulable facts which, in light of their experience and general knowledge, together with rational inferences from those facts, would reasonably warrant [the] intrusion" on the freedom of the citizen. *Glass v. State,* 681 S.W.2d 599 (Tex.Cr.App.1984) and cases cited therein at 601. However, a mere suspicion or inarticulate hunch is insufficient to justify such a stop. *Id.*

6. The Supreme Court, in *Terry v. Ohio, supra,* at 392 U.S. 11, n. 5, 88 S.Ct. 1874, n. 5, quotes the following language from *People v. Rivera,* 14 N.Y.2d 441, 201 N.E.2d 32, 252 N.Y.S.2d 458 (1964), *cert. denied,* 379 U.S. 978, 85 S.Ct. 679, 13 L.Ed.2d 568 (1965), as appropriately outlining the principle: "[T]he evidence needed to make [an investigative detention] is not of the same degree of conclusiveness as that required for an arrest. The stopping of the individual to inquire is not an arrest and the ground upon which the police may make the inquiry may be less incriminating than the ground for an arrest for a crime known to have been committed."

shot if he did not obey these orders. These facts are sufficient to demonstrate that appellant had been restricted or restrained in his liberty to such a degree as to constitute an arrest.[7]

In *Hoag v. State*, 728 S.W.2d 375 (Tex. Cr.App.1987), a case involving similar facts, we held that the defendant's detention constituted a warrantless arrest rather than an investigative detention where the police officers removed the defendant from his car at gunpoint, took him to the rear of the car and gave him *Miranda*[8] warnings. *Id.* at 379. The court of appeals in the present case distinguished *Hoag* on the basis that the police officer there testified that he believed the defendant was under arrest while the officer in the present case testified that the stop was only an investigative detention. The distinction is without consequence, however, as the officer's opinion is not the controlling factor.

In deciding *Hoag*, we specifically "acknowledge[d] that the question of whether a person is under arrest is not to be determined solely by the opinion of the arresting officer. *See Ruth v. State*, 645 S.W.2d 432 (Tex.Cr.App.1979); *Boone v. State*, 629 S.W.2d 786 (Tex.App.—Houston [14th Dist.] 1981, no pet.). Rather, the officer's opinion is a factor to be considered, along with the other facts and circumstances of the detention, in determining whether an arrest has taken place." *Hoag*, 728 S.W.2d at 378–379. The facts in the instant case establish that the initial detention of the appellant constituted an arrest even though the arresting officer characterized the stop as an investigative detention.

Furthermore, although the officer characterized the initial stop as an investigative detention, there was no investigation conducted. The record reflects that the officer did not ask the appellant any questions prior to or during the search and seizure conducted of appellant and his vehicles. Neither did the officer ask any questions of Stellmacher, at least not until after he had already seized the blue bag from the car, found the weapon, and conducted an inventory search of the trunk of one of the cars, at which point he already considered the appellant to be under arrest in any event.

■ The investigative detention contemplated by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), is one during which the police are allowed to briefly question a suspicious person respecting his identity, his reason for being in the area or location, and to make similar reasonable inquiries of a truly investigatory nature. Here, no such investigation was conducted and the detention can by no means be characterized as investigatory within the meaning of *Terry v. Ohio, supra.*

### III.

■ The second issue is whether the warrantless arrest was supported by probable cause. We hold that the arrest was not supported by probable cause and that the items of evidence should have therefore been suppressed as fruit of the illegal arrest.

The court of appeals relied on the officer's location of the weapon as the basis

---

**7.** For other cases where this Court has found that the detention of an individual rose to the level of an arrest, see the following: *Hogan v. State*, 631 S.W.2d 159 (Tex.Cr.App.1982) (defendant was arrested when officers grabbed his arm, "escorted him outside," ordered him to raise his hands and told him he was under arrest); *Hardinge v. State*, 500 S.W.2d 870 (Tex. Cr.App.1973) (arrest occurred when reserve officer for Sheriff's Department "held" defendant for the police); *Woods v. State*, 466 S.W.2d 741 (Tex.Cr.App.1971) (defendant was arrested when taken outside and ordered to place his booted feet into boot tracks leading from the scene of the crime to vicinity of defendant's house, in spite of fact that officers told him he was only under investigation); *White v. State*,

601 S.W.2d 364 (Tex.Cr.App.1980) (defendant was under arrest when he was "subdued and spread-eagled [sic] against a stock trailer" while officer held pistol on him); *Maldonado v. State*, 528 S.W.2d 234 (Tex.Cr.App.1975) (defendant was arrested when taken from inside the courthouse to a room in Sheriff's office at the same courthouse, and subsequently questioned for three hours); *Colston v. State*, 511 S.W.2d 10 (Tex.Cr.App.1974) (defendant was arrested when he was ordered at gunpoint to freeze and to place his hands on vehicle).

**8.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

for probable cause to arrest the appellant for an offense committed in the officer's presence. *See* Article 14.01(b), V.A.C.C.P. (authorizing warrantless arrest by peace officer for offense committed in his presence or within his view). However, given our finding that appellant was arrested before the officer found the weapon, the location of the weapon obviously cannot serve to support probable cause for the arrest. The only basis upon which the officer could have arrested appellant is on the available facts and circumstances respecting the alleged commission of a burglary.

■ As we stated in *Milton v. State*, 549 S.W.2d 190, 192 (Tex.Cr.App.1977), "it is state law and not federal law that governs the legality of a state arrest so long as that law does not violate federal constitutional protections against unreasonable searches and seizures." In Texas, warrantless arrests are authorized only in limited circumstances and are governed primarily by Chapter Fourteen of the Code of Criminal Procedure. *See generally Lowery v. State*, 499 S.W.2d 160, 164–165 (Tex.Cr. App.1973) (analyzing the provisions of Chapter Fourteen with respect to a warrantless arrest).

■ The three most common provisions arising in the caselaw are: Article 14.01(b), V.A.C.C.P., which authorizes a warrantless arrest for an offense committed in the officer's presence or within his view; Article 14.03(a)(1), V.A.C.C.P., which authorizes a warrantless arrest of "persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony"; and Article 14.04, V.A.C.C.P., which authorizes a warrantless arrest "where it is shown by satisfactory proof to a peace officer, upon

the representation of a credible person, that a felony has been committed, and that the offender is about to escape." These statutory provisions require the legal equivalent of constitutional probable cause.[9]

■ The "totality of the circumstances" test applies in Texas for determining probable cause for a warrantless search and seizure. *Eisenhauer v. State*, 754 S.W.2d 159 (Tex.Cr.App.1988); *see also United States v. Mendoza, et al.*, 722 F.2d 96, at 100, n. 5 (5th Cir.1983). The burden is on the State to prove the existence of probable cause to justify a warrantless arrest or search. *Brown v. State*, 481 S.W.2d 106, 109 (Tex.Cr.App.1972); *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Probable cause exists where the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a particular person has committed or is committing an offense. *See, e.g., Woodward v. State*, 668 S.W.2d 337 (Tex.Cr.App.1982) (opinion on rehearing), *cert. denied*, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985); *see also Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1308, 93 L.Ed. 1879 (1949).

■ Jachna testified that the facts known to him at the time he initially detained the appellant were the following:[10] (1) that the police received a telephone report of a burglary in progress involving a black male putting something in the trunk of a car; (2) that the location of the reported burglary was at an apartment complex whose manager he knew to have called in

---

**9.** *See, e.g., Johnson v. State*, 722 S.W.2d 417, 421 (Tex.Cr.App.1986) (Article 14.03(a)(1) requires "the functional equivalent of probable cause to believe that a particular person has committed a felony"); *Earley v. State*, 635 S.W.2d 528, 531 (Tex.Cr.App.1982) (the legislative prescription in Article 14.04 of what must be "shown by satisfactory proof" is the legal equivalent of constitutional probable cause).

**10.** In a case where, as here, a police radio broadcast is relied upon as the basis for a detention, the focus is usually on the information

known to the dispatcher of the broadcast in considering the issue of probable cause. *See, e.g., Washington v. State*, 518 S.W.2d 240 (Tex. Cr.App.1975); *Colston v. State*, 511 S.W.2d 10 (Tex.Cr.App.1974). In this case, however, the arresting officer, Jachna, was the only officer called by the State to testify; the dispatcher did not testify. Thus, only the arresting officer's testimony is available for consideration in our review of the determination of probable cause to support the arrest and search.

numerous reports of criminal activity; (3) that, upon arriving at the scene within one minute of the report, he observed a black male sitting at the wheel of a car; (4) that the car was backed into the parking space; (5) that the black male was about to drive away as the officer drove into the lot; and (6) that he knew no "blacks" lived at these apartments at that time.[11]

Officer Jachna testified that, at the time he arrived on the scene, "no burglary was occurring from [his] viewpoint." He also testified that, until the point at which he found the weapon in appellant's car, he did not observe any violation of the law. Thus, Article 14.01, which authorizes a warrantless arrest for an offense committed in the officer's presence, is inapplicable.

Jachna further acknowledged that, until the point at which he found the weapon, none of the activity he observed upon arriving at the scene was inconsistent with innocent activity. He testified that the fact of a black male putting something in the trunk of a car backed into a parking space at the Square Apartments was consistent with innocent activity, and that the fact of a black male about to drive away as a police officer was pulling into the parking lot was likewise consistent with innocent activity. We have held that, where events are as consistent with innocent activity as

with criminal activity, the detention of a suspect based on those events is unlawful under Article 14.03(a)(1). *See Hoag v. State*, 728 S.W.2d 375, 379 (Tex.Cr.App. 1987) and cases cited therein. According to the officer's testimony, then, there was no circumstance or event observed by him at the scene which, without more, would justify a warrantless arrest under Article 14.-03(a)(1).

The officer was also relying on the information he received in the dispatcher's report of a "burglary in progress" call, however, and so we now consider whether the information in the report, together with the other information known to the officer, constituted "satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape," as required by Article 14.04, V.A.C.C.P. We find that the available information did not rise to the level of probable cause required for a warrantless arrest.

To bring this case within the purview of Article 14.04, the burden is on the State to prove that the alleged fact that a burglary had been committed was "shown by satisfactory proof" to an officer "upon the representation of a credible person." Article 14.04, V.A.C.C.P. The State failed to sustain this burden on the record

---

11. Although Stellmacher testified that she was yelling "that's him" and "get him" as she ran to meet the officer while he was arresting the appellant, the officer did not testify to this fact at the suppression hearing when he delineated the specific facts he relied on in detaining the appellant. Further, when asked by defense counsel whether Stellmacher was outside at the scene when he arrived and whether she told him that appellant was the alleged burglar reported to the police, the officer testified that he "wasn't paying attention" and that he "[did not] know whether she was or not." Finally, at the trial on the merits, Jachna testified that he did not recall Stellmacher making the statements.

It seems apparent then, from the officer's testimony, that he did not rely on the statements which Stellmacher said she made. Because the burden is on the State to prove the existence of probable cause to justify a warrantless arrest or search, *see Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) and *Brown v. State*, 481 S.W.2d 106, 109 (Tex.Ct. App.1972), a failure of proof on any fact essential to a finding of probable cause is construed

against the State. This is not a question of credibility, the resolution of which is for the trier of fact, but simply a failure of proof.

As to the issue of credibility, we note that there were several points of conflict between the testimony of Stellmacher and Jachna: (1) Jachna testified that he did not handcuff appellant right away, and Stellmacher said Jachna handcuffed appellant immediately after he ordered him to get out of his car; (2) Jachna testified that the Chevrolet car in which appellant arrived was parked correctly and only the Oldsmobile was backed into the parking space, while Stellmacher said both cars were backed into the parking spaces; (3) Jachna testified that appellant made eye contact with him when he blocked his car in and ordered him out of the vehicle, and Stellmacher said that appellant was leaning down in the seat while Jachna was approaching him; (4) Jachna testified that appellant got out of his vehicle within a few seconds after Jachna ordered him out, and Stellmacher said that Jachna had to reach in the car and pull the appellant out of it.

before us. Specifically, the State failed to prove that either Jachna or the dispatcher knew the identity of the party who called in the report.

Although the record indicates that the identity of Stellmacher as the person who phoned in the report was revealed sometime *after* the fact of the arrest, the record never establishes that the identity of the caller was a fact known to Jachna or the dispatcher *at the time of the arrest.*[12] In reviewing a warrantless arrest to determine the existence of probable cause, we look to the facts known to the officers at the time of the arrest; subsequently discovered facts or later-acquired knowledge, like the fruits of a search, cannot retrospectively serve to bolster probable cause at the time of the arrest. *See Colston v. State,* 511 S.W.2d 10, 13 (Tex.Cr.App.1974).

Indeed, the testimony elicited from both Jachna and Stellmacher seems to indicate that the phone call by Stellmacher was made anonymously.[13] Although Jachna did testify that he believed Stellmacher to be a sort of "Crime Watch for [the police] in that area" and that he believed she was credible, he never testified that he knew she was the person who phoned in this report. Jachna's testimony that he considered Stellmacher a reliable source in general does not establish that he knew, at the time of the arrest, that she was the party who phoned in this particular report. Without this link, the past reliability of Stellmacher cannot factor in to the probable cause equation.

We will not engage in conjecture as to the existence of facts which are critical to a finding of probable cause and which the State bore the burden of proving. Rather, we require that the facts and circumstances upon which a detention is based must be specifically articulated as such in the record. As the Supreme Court explicated in *Terry v. Ohio, supra,* 392 U.S. 1 at 21, n. 18, 88 S.Ct. at 1880, n. 18, "[The] demand for specificity in the information upon which police action is predicated is the central teaching of … Fourth Amendment jurisprudence."

█ Further, even had the officer *assumed* that it was Stellmacher who called in the report at the time he responded to the police broadcast, we have held that it is the objective facts in existence at the time of the arrest and not the subjective conclusions of the officer which the reviewing court must scrutinize to determine the existence of probable cause. *Johnson v. State,* 722 S.W.2d 417, 419 (Tex.Cr.App. 1986) (citing *Townsley v. State,* 652 S.W.2d 791 (Tex.Cr.App.1983) and cases cited therein). Here, the State failed to prove the objective fact, through any witness, that the identity of Stellmacher as the reporter of the "burglary in progress" was a fact within the knowledge of either the dispatcher or Jachna at the time of the arrest.

The only information which was provided in the police broadcast was that there was a burglary in progress involving a black male putting something in the trunk of a car at the address of the Square Apart-

---

**12.** The record establishes that Jachna did not talk to Stellmacher at all until after he had already arrested the appellant.

**13.** Although the dispatcher was not called to testify, Stellmacher testified at both the pretrial hearing and at trial that the *only* information she gave to the dispatcher was the address of the apartments and the fact that there was a "burglary in progress involving a black male." She never testified, and the record never discloses, that she gave her name when she called in the purported "burglary."

Likewise, Jachna testified repeatedly that the *only* information he received from the police broadcast was that there was a burglary in progress at the apartment address involving a

black male putting something in the trunk of an automobile, as demonstrated by the following excerpt of his direct examination by the State:

[Prosecutor]: What was the nature of the call?
[Officer]: It was a burglary in progress call with the description of a black male putting something into the trunk—the trunk of an automobile.
[Prosecutor]: All right. *That's all the information you had when you drove to the location?*
[Officer]: *Yes.*
[Prosecutor]: And is that typically the kind of information you'll get over the radio until you have time to talk to witnesses at the scene?
[Officer]: Yes. It is.

ments. There was no description of appellant provided in the broadcast, beyond his sex and race. There was no description or license plate of the vehicle purportedly involved. There was no indication of the source or credibility of the information. Given that the officer did not observe anything at the scene which can objectively be considered as criminal conduct, the bare facts transmitted in the police broadcast are the only facts which were available to Jachna to establish probable cause at the time of the arrest. These facts, in and of themselves, are insufficient to create probable cause to believe that appellant had committed a burglary.

■ It is well established that neither a police broadcast nor an anonymous phone call is sufficient, standing alone, to establish probable cause for an arrest. *See Rojas v. State,* 797 S.W.2d 41, 43 (Tex.Cr.App. 1990); *Glass v. State,* 681 S.W.2d 599 (Tex. Cr.App.1984); *Ferguson v. State,* 573 S.W.2d 516, 522 (Tex.Cr.App.1978); *Ablon v. State,* 537 S.W.2d 267 (Tex.Cr.App.1976); *Mann v. State,* 525 S.W.2d 174 (Tex.Cr. App.1975); *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). There must be additional facts available to the officer, or the dispatcher, which would warrant a man of reasonable caution to conclude that a crime had been or was being committed. *See, e.g., Colston v. State,* 511 S.W.2d 10 (Tex.Cr.App.1974); *see also Rojas v. State,* 797 S.W.2d 41 (Tex.Cr.App.1990) (additional facts are required to establish probable cause under the totality of the circumstances test, where an anonymous tip is relied on for search and seizure). In this case, there were no additional corroborative facts within the officer's knowledge, beyond the police broadcast, to give rise to probable cause for an arrest of appellant for the offense of burglary.

In *Colston v. State,* 511 S.W.2d 10 (Tex. Cr.App.1974), we held that the warrantless arrest of the defendant was not justified where the arresting officer relied solely upon a police dispatch stating that the defendant was heavily armed and was believed to be carrying narcotics, and describ-

ing the defendant's vehicle make and license number. The arresting officer in *Colston* was relying exclusively on the broadcast and "had no personal knowledge of any crime being committed when he arrived on the scene" and arrested the defendant. *Colston, id.* at 12. Also, there was no disclosure in the record of the source or credibility of the information communicated in the dispatch. *Id.*

■ As in the present case, the arresting officer in *Colston* did not learn any information, apart from that communicated in the police dispatch, which was "in any sense corroborative of the fact that appellant had committed a crime or was in [the] process of committing any crime." *Id.* We therefore held that, "since the validity of the arrest is dependent upon the probable cause possessed by a [police dispatcher] who was not called to testify, this record does not reflect probable cause for the warrantless arrest." *Id.* at 13. As we explained in *Colston, id.* at 12–13, although the arresting officer in a situation such as that presented here "[has] the right to act upon the basis of the teletype dispatch and [is] entitled to assume that the officer requesting the arrest had sufficient probable cause to justify the arrest," where the record fails to establish that the issuing officer in fact had probable cause, the detention is not insulated from challenge.

The State never argues that the detention of appellant was a valid arrest based upon probable cause. The entirety of the State's argument is that the detention was based upon reasonably suspicious circumstances sufficient to justify, not an arrest, but the lesser intrusion of an investigative detention under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). However, as we held in part II of this opinion, the detention in this case was a full-blown arrest from its inception, not an investigative detention. Thus, the State bore the higher burden of proving probable cause to justify a warrantless arrest; the State's undertaking on the record before us, of proving suspicious circumstances sufficient to justify an investigative detention, is insufficient to uphold the warrantless arrest.

Since there was no available fact or circumstance to support probable cause other

than the police radio broadcast, the warrantless arrest was not authorized under Chapter Fourteen of the Code of Criminal Procedure and contravened the constitutional protections of the Fourth and Fourteenth Amendments to the United States Constitution, and Article 1, Section 9 of the Texas Constitution. The evidence seized pursuant to the illegal arrest should have been suppressed. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Article 38.23, V.A.C.C.P.

Accordingly, the judgment of the court of appeals is reversed and the cause is remanded to the trial court.

CAMPBELL, Judge, dissenting.

I write in dissent for two reasons. First, I believe that the majority's/plurality's analysis of the distinction between investigative detentions and warrantless arrests, under Texas law, is wholly inadequate and provides no guidance to our lower courts to properly analyze and characterize police detentions. Second, I would find that probable cause to support a warrantless arrest, pursuant to Tex.Crim.Proc.Code art. 14.04, did exist at the time Officer Jachna detained appellant, and that the subsequent searches of appellant's automobiles were valid inventory searches of vehicles subject to impoundment.

## I.  CHARACTERIZATION OF DETENTIONS UNDER TEXAS LAW

The United States Supreme Court, under the Fourth Amendment, authorized a police officer to conduct a carefully limited search for weapons of persons who the officer has stopped based on reasonable suspicion of criminal activity and who the officer reasonably believes may be armed and presently dangerous. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In a later case involving the so-called "stop and frisk" doctrine, the Supreme Court upheld, with little discussion, the validity of a pre-search non-arrest detention. "A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972); see also *Johnson v. State,* 658 S.W.2d 623 (Tex.Cr.App.1983) (It is well established that an officer may briefly stop a suspicious individual in order to determine identity or maintain status quo while obtaining further information).[1] Thus, investigative detentions and custodial arrests are both considered to be seizures under the Fourth Amendment.[2]

Tex.Crim.Proc.Code art. 15.22 provides that "[a] person is arrested when he has been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest, or by an officer or person arresting without a warrant." This Court has previously characterized detentions or seizures as arrests within the "placed under restraint" provision of article 15.22. This Court has held

---

1. The only explicit statutory recognition of investigative detentions apart from arrests is evidenced by the amendment of Tex. Penal Code § 38.04(a):

   A person commits an offense if he intentionally flees from a person he knows is a peace officer attempting to arrest him *or detain him for the purpose of questioning or investigating possible criminal activity.* (changes effective September 1, 1989 underlined.)

   Thus, in Texas detained persons may entertain a reasonable belief that they are free to leave after being approached by officers, only when the interaction is voluntary. Whenever an investigative detention is justified the detainee is not free to leave. Practically, the Texas scheme comports with the Fourth Amendment

doctrine of "seizure" as explained in *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (A person is seized under the Fourth Amendment only if, in view of the circumstances, a reasonable person would have believed he was not free to leave); *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). *See and compare Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979).

2. For an in-depth Fourth Amendment analysis of *Terry, Williams,* and their progeny see Maclin, *The Decline of the Right of Locomotion: The Fourth Amendment on the Streets,* 75 CORNELL L.R. 1258 (1990).

that the actual physical taking of the suspect into custody is not necessary to constitute an arrest. Rather, an arrest is complete when a person's liberty of movement is restricted or restrained. Some distinction between actual custody and physical restraint is recognized. *Hoag v. State*, 728 S.W.2d 375, 379 (Tex.Cr.App.1987); *Brewster v. State*, 606 S.W.2d 325 (Tex.Cr.App. 1980); *Hardinge v. State*, 500 S.W.2d 870 (Tex.Cr.App.1973); *Woods v. State*, 466 S.W.2d 741 (Tex.Cr.App.1971).[3]

In *Hoag, supra,* a burglary victim gave a general description of the burglar and his car, and tentatively identified Hoag from a photo array. Officers placed Hoag under surveillance. After following him to two houses and an apartment complex, police had not observed criminal activity or found signs that a burglary had been committed. When Hoag returned to his car from the apartment complex, he appeared to place something on the floorboard. Hoag was stopped a few blocks away. An officer approached Hoag and asked him to get out of the car. Hoag was then taken at gunpoint to the rear of his car, where officers read him his *Miranda*[4] warnings. The arresting officer testified that he believed Hoag was under arrest at that time. The officers on the scene did not conduct a patdown search of Hoag. With Hoag still surrounded by officers, one officer went back and looked inside the passenger compartment of Hoag's car and saw a diving knife sticking out from under the driver's seat and lumps under the floormat. The officer flipped back the mat and found jewelry and coins. This Court held that the seizure of Hoag was in fact a warrantless arrest not supported by probable cause.

In *Hoag*, we relied on the meaning of "placed under restraint" within article 15.-22, and primarily considered three factors in finding that Hoag was "placed under restraint." First, we considered the opinion of the arresting officer. While acknowledging that "the question of whether a person is under arrest is not to be determined solely by the opinion of the arresting officer," *see Ruth v. State*, 645 S.W.2d 432 (Tex.Cr.App.1979), we concluded that "the officer's opinion is a factor to be considered, along with the other facts and circumstances of the detention, in determining whether an arrest has taken place." *Hoag* 728 S.W.2d at 379. Second, we relied on the forced movement of Hoag to the rear of his car. Finally, we recognized that several officers on the scene had displayed weapons.

This Court has characterized an individual's detention as a warrantless arrest in a variety of factual situations. *Hogan v. State*, 631 S.W.2d 159 (Tex.Cr.App.1982) (Defendant was arrested without warrant, when officers grabbed his left arm and "escorted him outside." Once outside, defendant was ordered to raise his hands, and was told he was "under arrest for robbery investigation"); *Hardinge v. State*, 500 S.W.2d 870 (Tex.Cr.App.1973) (Arrest took place when reserve officer for Sheriff's Department "held" defendant for the police); *Woods v. State*, 466 S.W.2d 741 (Tex. Cr.App.1971) (Defendant, who asked if he was under arrest and was told that he was only under investigation, was arrested when taken outside and ordered to place his booted feet into several boot tracks leading from the scene of the crime to the vicinity of defendant's house. "It is evident at that time [his] freedom of movement ceased"); *White v. State*, 601 S.W.2d 364 (Tex.Cr.App.1980) (Defendant was under arrest when he was "subdued and

---

**3.** We note that article 15.22 predates the Supreme Court decisions in *Terry v. Ohio, supra* and *Adams v. Williams, supra.* Professor Dix argues that such statutes "purport to characterize arrests by the fact of custody and are of no value in characterizing detentions for purposes of modern analysis.... [W]hether or not a detention *took place* at all will be resolved in the same way, whatever the nature of the detention. The more difficult task is identifying the appropriate method for categorizing detentions for

purposes of review of their validity and related matters." Dix, *Nonarrest Investigatory Detentions in Search and Seizure Law,* 1985 DUKE L.J. 849, 920–21 (1985) (emphasis original). Article 15.22, however, provides that an arrest is effectuated when a person is "placed under restraint" or "taken into custody."

**4.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

spread-eagled [sic] against a stock trailer" and one of two officers on the scene was holding a pistol on him. No announcement of arrest was necessary); *Maldonado v. State*, 528 S.W.2d 234 (Tex.Cr.App.1975) (Defendant was arrested when taken from inside the courthouse to a room in the Sheriff's office at the same courthouse, and questioned for three hours. Defendant was under arrest either when first taken to the room or "shortly thereafter").

Texas courts of appeals have also applied article 15.22 in finding that detentions were in fact warrantless arrests. *Pickens v. State*, 712 S.W.2d 560 (Tex.App.—Houston [1st] 1986, *rev. ref'd*) (Handcuffing and placing the defendant in patrol car was equivalent to arrest); *Campbell v. State*, 644 S.W.2d 154 (Tex.App.—Austin 1982, *rev. ref'd*, 647 S.W.2d 660 (Tex.Cr.App. 1983).) (Defendants were not free to go when they were ordered out of car and instructed to sit on highway guardrail with their hands in their laps); *Gilmore v. State*, 666 S.W.2d 136 (Tex.App.—Amarillo 1983, *rev. ref'd*) (Appellant's liberty of movement was restricted and thus under arrest when "held by the U.S. Customs Service"); *Jones v. State*, 746 S.W.2d 281 (Tex.App.—Houston [1st] 1988, *rev. ref'd*) (Appellant was arrested when officer placed him in patrol car and drove him to the house appellant had burglarized); but see *Burkhalter v. State*, 642 S.W.2d 231 (Tex.App.—Houston [14th] 1982) (Appellant was not under arrest at hospital after wild driving and head-on collision, even when officer previously handcuffed appellant and told him he was under arrest. Appellant had been taken to hospital for blood sample and was not in presence of officer or handcuffed); *Snabb v. State*, 683 S.W.2d 850 (Tex.App.—Amarillo 1984, disavowed in *Morris v. State*, 739 S.W.2d 63 (Tex.Cr. App.1987) (plurality opinion)) (Appellant was not under arrest after officers chased down her car, on foot, stopped her, and told her that she was under arrest. Appellant was arrested only after she ran from car

and was caught by officer who grabbed her by the arm).

This Court has not articulated a specific standard or test for determining when an investigative detention, valid at it's inception, becomes so intrusive that it must be considered an arrest under article 15.22. This Court has made clear, however, that any of the following facts and circumstances, standing alone, do not necessarily transform an investigative stop into a warrantless arrest. We have found that the detaining officer's opinion is a factor to be considered, along with the other facts and circumstances, but is not solely determinative of the status of the detention. *Hoag*, 728 S.W.2d at 378–79; *Ruth v. State*, 645 S.W.2d 432 (Tex.Cr.App.1979). Although the display of weapons may be a critical factor in the showing of an actual arrest, the officer's use of weapons need not always preclude a valid investigative detention. *Marsh v. State*, 684 S.W.2d 676 (Tex. Cr.App.1984); *Ebarb v. State*, 598 S.W.2d 842 (Tex.Cr.App.1979).

Furthermore, the giving of *Miranda* warnings may be viewed, in some situations, as more indicative of proper cautiousness than of the officer's intent to arrest. *Dancy v. State*, 728 S.W.2d 772 (Tex.Cr. App.1987), cert. denied, 484 U.S. 975, 108 S.Ct. 485, 98 L.Ed.2d 484. In addition, blocking in the suspect's car does not necessarily indicate an arrest. *Ebarb v. State, supra.*

Finally, the announcement of an arrest is not required to effectuate an arrest. *White v. State, supra.* Nevertheless, some combination of the facts and circumstances surrounding a particular detention may signal the onset of an arrest.

The clearest standard arising from the existing cases interpreting article 15.22, is that the characterization of the detention must be made in light of all of the facts and circumstances surrounding the stop. *Hoag*, 728 S.W.2d at 379. Some factors that have been used by various courts to aid in characterizing detentions are; the use of force,[5] including the display of weap-

---

5. *United States v. Ceballos*, 654 F.2d 177, 183–84 (2d Cir.1981) (citing numerous cases at 182 n. 7)

(Defendant was arrested when police officers blocked the progress of his car and approached

ons,[6] and the use of handcuffs[7] to secure the detainee; the length of the detention[8]; admonitions of the detaining officer[9]; the reasonable perception of the detainee as to his status[10]; movement of the detainee[11]; the overall intrusiveness of the detention[12]; and the opinion of the detaining officer as to the status of the detention[13]. These factors, while not solely determinative, should at least frame the inquiry for characterization of detentions.

This and other Texas courts, when evaluating the facts and circumstances used to characterize a detention, have focused on the actual physical restraint or forced movement of the detainee. In almost all cases deciding that the challenged detention was an arrest under article 15.22, the detainee's freedom of movement has been restricted or the detainee has been forced to move to a more controlled location. Thus, I would find that the detainee must be actually restrained, such that his freedom of movement is restricted, either through force or the imminent use of force by the detaining officer, before a detention can be characterized as an arrest under the "placed under restraint" provision of article 15.22.

In the instant case, appellant's detention is most appropriately characterized as a warrantless arrest under article 15.22. Jachna blocked in appellant's car, drew his service revolver, ordered appellant out of his car at gunpoint, ordered him to lie face down on the parking lot with his hands behind his back, and told him that he would be shot if he did not obey these orders. The amount of force used, the degree of the intrusion, the admonitions of the officer, and the extent to which appellant's freedom of movement was curtailed indicate that his detention should be characterized as an arrest under article 15.22. For other analyses see *United States v. Ceballos*, 654 F.2d 177 (2d Cir.1981); *State v. Williams*, 102 Wash.2d 733, 689 P.2d 1065 (1984).

with drawn guns); *United States v. Vasquez*, 638 F.2d 507 (2d Cir.1980) ("[A] maximal intrusion, even if technically short of arrest, must be based on probable cause").

6. *Hoag*, 728 S.W.2d at 379; *United States v. Wilson*, 569 F.2d 392 (5th Cir.1978) (Detainee under arrest when approached by officer with a drawn gun).

7. *Mays v. State*, 726 S.W.2d 937 (Tex.Cr.App. 1986), *cert. denied*, 484 U.S. 1079, 108 S.Ct. 1059, 98 L.Ed.2d 1020 (1988) (Use of handcuffs to secure Mays did not effect characterization of his seizure as an investigative detention).

8. *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (The permissible length of the detention is related to the officer's diligent pursuit of the investigation); *United States v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985) (An investigative stop cannot continue indefinitely; at some point, a seizure can no longer be considered a non-arrest detention).

9. *Hogan*, 631 S.W.2d at 161.

10. *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (Seizure occurs, under the Fourth Amendment, only if, in light of the circumstances, a reasonable person would believe he is not free to leave); *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (Seizure effected by "a show of official authority such that 'a reasonable person would have believed that he was not free to leave'"); *Melton v. State*, 790 S.W.2d 322, 329 (Tex.Cr.App.1990); *Gilbreath v. State*, 412 S.W.2d 60, 61 (Tex.Cr.App.1967) ("Whether the accused is or [is] not under arrest is to be determined from the sufficiency of facts to reasonably create the impression on his mind that he is under arrest").

11. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) (Petitioner's seizure was not "even roughly analogous to the narrowly defined intrusions involved in *Terry* and its progeny, where he was taken from neighbor's house to a police car, transported to station house, and put in interrogation room); *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (Police officers are allowed to order drivers out of their cars after a lawful stop); *Hoag*, 728 S.W.2d at 379; *Hogan*, 631 S.W.2d at 160.

12. *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969) (The Fourth Amendment was "meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed 'arrests' or 'investigatory detentions'"); *Dunaway v. New York*, 442 U.S. at 213, 99 S.Ct. at 2257.

13. *Hoag*, 728 S.W.2d at 379; *Ruth v. State*, 645 S.W.2d 432 (Tex.Cr.App.1979).

## II. PROBABLE CAUSE DETERMINATION

The general rule in Texas is that an arrest must be made pursuant to a warrant. *Dejarnette v. State*, 732 S.W.2d 346, 349 (Tex.Cr.App.1987); *Honeycutt v. State*, 499 S.W.2d 662 (Tex.Cr.App.1973). However, "it is state law and not federal law that governs the legality of a state arrest so long as that law does not violate federal constitutional protections against unreasonable searches and seizures." *Milton v. State*, 549 S.W.2d 190, 192 (Tex.Cr.App. 1977).

Tex.Crim.Proc.Code art. 14.04 provides for warrantless arrests "where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape." Article 14.04 first requires that the officer have "satisfactory proof" that a felony has been committed by an offender. An officer who does not, himself, have probable cause for making a warrantless arrest, may act on the basis of information relayed to him by another officer requesting that an arrest be made. *Pyles v. State*, 755 S.W.2d 98 (Tex.Cr.App.), cert. denied, 488 U.S. 986, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988); *Tarpley v. State*, 565 S.W.2d 525 (Tex.Cr. App.1978). Moreover, the individual supplying the information need not be a uniformed police officer. *Weeks v. State*, 417 S.W.2d 716 (Tex.Cr.App.), *cert. denied* 389 U.S. 996, 88 S.Ct. 500, 19 L.Ed.2d 494 (1967).

"The legislative provision of what must be 'shown by satisfactory proof' [under art. 14.04] is the legal equivalent of constitutional probable cause." *Earley v. State*, 635 S.W.2d 528 (Tex.Cr.App.1982); *Webb v. State*, 760 S.W.2d 263 (Tex.Cr.App.1988), *cert. denied*, 491 U.S. 910, 109 S.Ct. 3202, 105 L.Ed.2d 709 (1989). The Supreme Court has articulated the probable cause requirement as follows:

> [P]robable cause is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observe as trained officers. We weigh not individual layers but the 'laminated' total.... 'In dealing with probable cause, ... as the very name implies, we are dealing with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'

> \*   \*   \*   \*   \*   \*

> Probable cause exists where "the facts and circumstances within their [the officers'] knowledge, and of which they had reasonably trustworthy information, [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed.

*Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949); *Woodward v. State*, 668 S.W.2d 337 (Tex.Cr.App.1982) (opinion on rehearing), cert. denied, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985).

To satisfy the second requirement of article 14.04, the facts must show that the suspected offender is about to escape. "From the 'concrete factual situation' ... it must be apparent to the arresting officer that the offender is, in fact, 'about to escape'" *Stanton v. State*, 743 S.W.2d 233, 235 (Tex.Cr.App.1988) (citing *King v. State*, 631 S.W.2d 486 (Tex.Cr.App.), *cert. denied*, 459 U.S. 928, 103 S.Ct. 238, 74 L.Ed.2d 188 (1982)). The general rule for a showing of escape has been stated as follows:

> [I]n order for an arrest to be justified under the Art. 14.04 exception to the warrant requirement, there must be some evidence amounting to satisfactory proof, either related by a credible person to an officer or observed by the officer him/herself indicating that the defendant was about to escape so that there was no time to procure a warrant.

*Dejarnette*, 732 S.W.2d at 350–51 (citing numerous cases).

In the instant case, I would find that appellant's warrantless arrest was supported by probable cause and authorized under article 14.04. First, I would consider the following facts and circumstances surrounding appellant's arrest, and known to

Jachna at the time of the arrest: there was a reported burglary in progress involving a black male putting something into the trunk of a car at the Square Apartments; Jachna arrived at the Square within one minute of the call; Jachna saw appellant, a black male; Jachna knew no blacks lived at the Square; appellant was in the driver's seat of a car backed into a parking space; Jachna knew this was a method commonly used by burglars; appellant was the only person on the scene except for Stellmacher, who had filed the report; appellant immediately attempted to drive away when Jachna approached in his patrol car; there was no time to seek a warrant; and finally, Jachna knew that Stellmacher was an extremely reliable source of information.[14] Based on the facts and circumstances that developed in his presence and the report from a reliable source present at the scene, Jachna had a reasonable belief that appellant was the burglar in question and that he was about to escape.[15]

Once probable cause for the arrest had developed, Jachna could search appellant's person and the area "within his immediate control." *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The interior of a passenger car is normally "within the immediate control of the arrestee." *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). "[A]rticles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon' ..." Furthermore, "the police may examine the contents of any open or closed container found within the passen-

ger compartment." *Id.* at 460, 101 S.Ct. at 2864. Thus, Jachna was authorized to conduct the initial limited search of appellant's car.

Jachna's continued searches of appellant's cars were valid inventory searches of impounded vehicles. *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Delgado v. State*, 718 S.W.2d 718 (Tex.Cr.App.1986). When the driver is removed from his car and placed under arrest, his car may be impounded and inventoried, if there are no other alternatives available to insure the protection of the car. *Delgado*, supra; *Evers v. State*, 576 S.W.2d 46 (Tex.Cr.App.1978). In the instant case, appellant's cars were illegally parked on private property and appellant had no alternative means for removing his cars. Thus, the cars were subject to impoundment and proper inventory.

The majority opinion contends that Stellmacher's phone call to the police was made anonymously, because neither she nor Officer Jachna testified that she identified herself when she first reported a burglary in progress at the Square. I think it strains credulity to call Stellmacher an anonymous source of information, when she testified to the facts surrounding her call to the police, both at pretrial and at trial. Moreover, while we recognize that the existence of probable cause is a mixed question of fact and law, in most cases the determination of probable cause is necessarily a combination of an examination of the facts and the reasonable inferences that can be drawn from those facts. The officer at the scene is not limited to the facts as presented, but must also be allowed to draw reasonable inferences from those facts.[16] Jachna's

---

**14.** Jachna testified that he and other officers had received information from Stellmacher before and that it was reliable "99.9% of the time." Stellmacher testified that she had personally apprehended thirty three burglars at the Square.

**15.** See *United States v. Jacobsen*, 466 U.S. 109, 115, 104 S.Ct. 1652, 1657, 80 L.Ed.2d 85 (1984) ("The reasonableness of an official invasion of the citizen's privacy must be appraised on the basis of the facts as they existed at the time that invasion occurred").

**16.** The majority contends "that it is the objective facts in existence at the time of the arrest and

not the subjective conclusions of the officer which the reviewing court must scrutinize to determine the existence of probable cause. *Johnson v. State*, 722 S.W.2d 417, 419 (Tex.Cr. App.1986) (citing *Townsley v. State*, 652 S.W.2d 791 (Tex.Cr.App.1983)." This view would tend to indicate that reasonable inferences drawn from the objective facts cannot enter into the probable cause determination. We note that *Townsley, supra* in actuality states: "The mere subjective conclusions of a police officer *concerning the existence of probable cause* is not binding on this court which must independently scrutinize the objective facts to determine the

testimony indicates that he was previously familiar with Stellmacher. Furthermore, he knew that she was the manager of the Square, that she had previously reported crimes at the Square, and that he and other officers knew her to be a reliable source. See note 14 *supra*. From the information received in the radio report combined with his familiarity with the area, the time of the report (early afternoon on a weekday), the absence of other persons on the scene, the absence of other cars in the Square's parking lot, and with Stellmacher's history of frequently and accurately reporting crimes at the Square, Jachna could have reasonably concluded that the report in question probably had been initiated by a call from Stellmacher. Thus, I would find that Stellmacher's reliability was a factor to be considered in evaluating the existence of probable cause at the time of the arrest.

Even assuming *arguendo*, however, that Stellmacher's track record of reliability could not enter into the probable cause equation, I would still find that probable cause to arrest existed in the instant case. The majority is correct in finding that "it is well established that neither a police broadcast nor an anonymous phone call is sufficient, standing alone, to establish probable cause for an arrest." *ante* at 416. The cases cited by the majority, however, do not necessarily preclude a finding of probable cause in the instant case.

In *Rojas v. State*, 797 S.W.2d 41 (Tex.Cr. App.1990), the police received an anonymous tip that marijuana would be found in the trunk of Rojas' car. The anonymous informant gave a detailed description of the car, and told police that the car would be at a particular church and cemetery that afternoon, in connection with funeral services for Rojas' brother. Officers located the vehicle at the church, followed it to the cemetery, and later stopped the car at a local gas station. We reversed Rojas' conviction, because most of the information supplied by the informant could have been available to any careful observer. The informant did not supply information to show personal knowledge or additional facts confirming that marijuana would be found in Rojas' car. In the instant case, the report was of a burglary in progress with a black male putting something into the trunk of a car at the Square. When Jachna arrived within less than one minute at the reported location, his observations immediately confirmed at least part of the information he had received from the report. Moreover, his conclusion that appellant must be the burglar in question was at least partially confirmed by the fact that appellant was sitting at the driver's seat of a car backed into a parking space, and by appellant's immediate attempt to leave upon seeing Jachna's patrol car. This differs completely from the situation in *Rojas* where all of the information reported and confirmed could have been supplied by any person who had observed Rojas' car and read the obituaries in the newspaper.

In *Glass v. State*, police received an anonymous tip that the occupants of two cars were shooting at each other. The informant gave a general description of the cars and the location of the alleged shooting. Police later stopped a car that matched one description near the reported location. This Court found that this investigatory stop was not supported by "probable cause to investigate." This Court relied primarily on the lack of a showing of proximity in time between the alleged shooting, the report, and the stop. Without a showing of proximity in time, this Court found that "it would not be reasonable to conclude, solely on the basis of the match of color and make of the car, that the car stopped was the car involved in the reported incident." *Id.* at 601. In the instant case, we have a clear showing of an extremely close proximity in time. Thus, *Glass* is largely inapplicable.

Furthermore, I consider the other anonymous tip cases relied on by the majority to be either inapplicable or unhelpful. *See e.g. Ablon v. State*, 537 S.W.2d 267 (Tex.Cr. App.1976) (A *Terry* stop case involving an anonymous report describing a suspicious

---

existence of probable cause." *Id.* at 796 (emphasis added). *Townsley* merely asserts that the reviewing court is not bound by the police officer's conclusion as to the existence of probable

cause. *Townsley* does not forbid the officer from drawing objectively reasonable inferences from the facts.

person in the backyard of an unattended home in a high burglary area—this Court found the stop and frisk to have been proper under the circumstances where the suspect was stopped a short time later two houses away); *Mann v. State*, 525 S.W.2d 174 (Tex.Cr.App.1975) (An anonymous report by two hitchhikers describing a car and alleging that they overheard the occupants saying they were going to burglarize a place in town did not constitute probable cause).

The majority claims that "there were no additional corroborative facts within [Jachna's] knowledge, beyond the police broadcast, to give rise to probable cause for an arrest of appellant." *Ante* at 416. The majority relies primarily on *Colston v. State*, 511 S.W.2d 10 (Tex.Cr.App.1974). In *Colston*, officers received a Department of Public Safety BOLO [17] naming Colston, describing the make and license number of his car, and advising that he was believed to be carrying narcotics and was heavily armed. The BOLO was originated by a Federal narcotics agent in San Antonio. Officers located Colston's car in the parking lot of a local lounge, and arrested him as he was about to enter his car. This Court found that his arrest was not supported by probable cause because the arresting officers had not observed any unusual conduct on the part of Colston that could corroborate the information contained in the BOLO. Although we concluded that the arresting officers were entitled to rely on another officer's request to arrest, we found the record did not reflect probable cause, since the federal officer who requested the BOLO was not called to testify about the basis of his information.

In essence, the holding in *Colston* requires that either (1) the officer requesting an arrest demonstrate his basis for probable cause, or (2) the arresting officers show that the information in the BOLO was corroborated by their observations.

In the instant case, there was no police request for arrest or BOLO. Stellmacher was a citizen informant who testified at pretrial and at trial as to the basis of her report to the police. Moreover, as previously discussed, the information reported by Stellmacher was partially corroborated by Jachna's observations at the scene.

I fail to comprehend what the majority would require the State to show in this case. Officer Jachna was confronted with a situation that surely occurs every day. A citizen reported a crime in progress. The police dispatcher issued a report. An officer was fortunately in close proximity. His observations at the scene partially corroborated the report and his experience told him that the situation could be dangerous. The suspect was attempting to flee. Must he then be required to attempt to ascertain the basis for the report?

I think the majority would attempt to impose an unrealistic and dangerous requirement on the officer faced with this situation. Police officers must be allowed to rely on such radio reports to make arrests when their own observations are corroborative of the information they have received.

I would overrule appellant's ground for review, and affirm the judgement of the court of appeals. Therefore, I dissent.

McCORMICK, P.J., and WHITE, J., joined.

---

**17.** BOLO is an acronym for "be on the lookout."