The STATE of Texas, Appellant,

v.

Sammy M. MORA, Appellee.

No. 07–93–0410–CR.

Court of Appeals of Texas, Amarillo.

March 7, 1994.

Travis S. Ware, Criminal Dist. Atty., Michael West, Lubbock, for appellant.

O'Shea, Hart & Forcum, P.C., John J.C. O'Shea, Lubbock, for appellee.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

REYNOLDS, Chief Justice.

Charged by complaint and information with the offenses of unlawfully carrying a weapon, criminal mischief, and threat to cause serious bodily injury, appellee Sammy M. Mora moved the trial court to, and the

court did, suppress evidence seized as the result of a warrantless search. Appealing, the State contends the court abused its discretion in granting appellee's motion to suppress. *See* Tex.Code Crim.Proc.Ann. art. 44.01(a)(5) (Vernon Supp.1994). Disagreeing, we will affirm the suppression order.

At the hearing on appellee's suppression motion, Lucille Lopez testified that she and her husband drove to her son's home at 4801 Quirt Avenue in Lubbock to visit him. Her son was not home, but she saw appellee standing outside the back door. Appellee told her that "he would come and kill my son." She went to a neighbor's home, called the police, and said "somebody is coming to kill my son."

It was the testimony of patrolman Lowell Owens that at about 8:30 p.m., he drove to 4801 Quirt Avenue in response to a police dispatch "that one of the parties was armed with a firearm, and he threatened someone." Arriving, the patrolman "observed a person get into a vehicle and then backing out of a driveway at the complainant's (sic) address." Meeting the vehicle, the patrolman made a u-turn and overtook the vehicle in the 4600 block of Quirt Avenue. Conceding that there were no traffic violations, albeit it was later noticed that the vehicle had an expired inspection sticker, the patrolman activated his red lights and the vehicle stopped. The patrolman waited for backup units to arrive.

Police officer Billy Koontz gave testimony that he was sent to assist officer Owens by a dispatch of "civil disturbance with a subject armed with a gun." When he arrived at the scene, he saw officer Owens at the driver's side of the vehicle, and he went to the passenger's side.

At that moment, police officer Mark Kirkpatrick arrived in response to a call he had received. Asked the nature of the call, he replied that "officer Lowell Owens received a call to 4800 block of Quirt for a disturbance involving a man in a black pickup with a gun." Upon arrival, he observed that officer Owens had stopped a black 1968 Chevrolet pickup occupied by two Hispanic males, and that the two officers were at the sides of the pickup.

The officers are in agreement that officer Owens asked the driver, identified as appellee, to step out, and officer Koontz asked the passenger, identified as Daniel Gonzales, to step out. Appellee and Gonzales were stationed on the opposite sides of, and with their hands on, the bed of the pickup with their legs spread apart. Appellee was searched by officer Owens, and Gonzales was searched by officer Koontz. Neither search revealed any weapon or contraband.

Officers Owens and Koontz searched the pickup. Officer Owens affirmed he was the one who found and removed a handgun and a shotgun from under the seat, and officer Koontz removed a machete; officer Koontz testified he discovered the shotgun under the front seat and the machete on the floorboard; and officer Kirkpatrick said officer Koontz removed the shotgun from the pickup.

The officers and the arrestees were not in agreement as to when appellee and Gonzales were handcuffed and told they were under arrest. Officer Owens, noting that the events occurred 28 months ago, candidly stated that he could not remember whether he handcuffed appellee and placed him in his patrol car before or after the pickup was searched. Officer Koontz said Gonzales was arrested after the weapons were located in the pickup. Officer Kirkpatrick reported that the arrests were made after the weapons were found in the pickup, that officer Owens handcuffed appellee, and that he handcuffed Gonzales and took him to jail. Appellee testified that after he was searched, he was handcuffed and placed in the patrol car before his pickup was searched. Gonzales stated he was searched, handcuffed, placed in the patrol car from where he could see that appellee was handcuffed, and taken in before the pickup was searched.

■ As the movant in the motion to suppress evidence, appellee met his initial burden of defeating the presumption of proper police conduct by evidence establishing that the search of his pickup and the seizure of the weapons occurred without a warrant. It then became the burden of the State to prove the reasonableness of the search and seizure. *Russell v. State,* 717 S.W.2d 7, 9–10 (Tex.Cr.App.1986). By its order granting

appellee's motion and suppressing the evidence seized, the trial court, albeit not articulating its reasons, impliedly, but necessarily, found facts producing the conclusion that the State failed to prove the reasonableness of the search and seizure. If the decision was correct on any applicable theory of law, it will be sustained. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Cr.App.1990).

■ The State contests the correctness of the decision by contending the trial court abused its discretion in granting appellee's motion to suppress evidence because (1) the search was incident to a lawful arrest or, alternatively, (2) the search was pursuant to an investigative detention. To determine whether the court abused its discretion, the evidence is viewed in the light most favorable to the court's ruling. In this regard, we defer to the trial judge as the sole trier of fact and judge of the credibility of the witnesses as well as the weight to be given the testimony of the witnesses. Thus, we do not engage in our own factual review; rather, we decide whether the trial judge's implied fact findings are supported by the record. If so, we are not at liberty to disturb the findings, and we address only the question whether the trial judge incorrectly applied the law to the facts. *Id.*

■ Because an investigative detention is less intrusive on the personal security than an arrest, *Brem v. State*, 571 S.W.2d 314, 318 (Tex.Cr.App.1978), we first consider the State's alternative argument that the search was valid pursuant to an investigative detention. An investigative detention, which occurs when "the police are allowed to briefly question a suspicious person respecting his identity, his reason for being in the area or location, and to make similar inquiries of a truly investigatory nature," *Amores v. State*, 816 S.W.2d 407, 412 (Tex.Cr.App.1991), must be supported by reasonable suspicion. *Johnson v. State*, 658 S.W.2d 623, 626 (Tex.Cr. App.1983). Then, to justify the detention, the police officer must have specific, articulable facts, which in light of his experience and general knowledge, together with rational inference from those facts, would reasonably warrant the intrusion on the freedom of the person stopped for further investigation.

*Brem v. State*, 571 S.W.2d at 318. A mere hunch is insufficient. *Johnson v. State*, 658 S.W.2d 623 at 626.

■ Applying these principles to the evidence heard, the trial court reasonably could have found the absence of a lawful investigative stop and detention. As a threshold matter, the evidence does not reveal that an investigation was made. None of the officers asked appellee or Gonzales any questions before, during, or after the search and seizure. Considering the evidence in the light of the character of an investigative detention, the detention of appellee cannot be characterized as investigatory. *Amores v. State*, 816 S.W.2d at 412.

Further, officer Owens testified to the facts known to him when he stopped and detained appellee and Gonzales, beginning with the receipt of the radio dispatch. Since the dispatcher did not testify, only the testimony of officer Owens is available for consideration. *Id.* at 413 n. 10.

Officer Owens only articulated that in response to a radio dispatch "that one of the parties was armed with a firearm, and he threatened someone," he drove to 4801 Quirt Avenue, where he observed a person get into a vehicle, back out of the driveway, and drive along the avenue without violating any traffic law. He did not express any knowledge that appellee or Gonzales was one of the parties mentioned in the radio dispatch as being armed and had threatened someone. The observations he made did not reveal the commission by appellee of any traffic violation or any crime in his presence. Given the facts Owens articulated, he showed no reasonable suspicion for the stop and detention, particularly since the conduct of appellee was as consistent with innocent activity as with criminal activity. As a result, the detention was unlawful. *Schwartz v. State*, 635 S.W.2d 545, 547 (Tex.Cr.App.1982).

■ Because, as we earlier noted, no investigation was undertaken, the detention rose to the level of an arrest. *Burkes v. State*, 830 S.W.2d 922, 925 (Tex.Cr.App.1991). However, it suffices to record that since the evidence shows officer Owens did not have a reasonable suspicion to justify the investiga-

tive detention, a lesser intrusion than an arrest, the same evidence shows that he lacked the more demanding probable cause for making a valid, warrantless arrest. *Accord Amores v. State,* 816 S.W.2d at 416. It follows that the trial judge correctly applied the law to the facts, and did not abuse his discretion, in granting appellee's motion to suppress the evidence. The State's point of error is overruled.

█ In considering the State's contention, we have not overlooked its citation of and reliance on an unpublished opinion issued by this Court, one which is not to be cited as authority. Tex.R.App. P. 90(i). While recognizing the prohibition of citing the opinion as authority, the State nevertheless attempts to circumvent the rule by writing that unpublished facts are extremely similar to the instant case and may be helpful to the determination of the issue raised here. The State also orally argued that the Lubbock police were familiar with the unpublished opinion and followed it.

Neither reason justifies the State's violation of the rule. And if, as the State represents, the Lubbock police were familiar with the opinion, they failed to follow its teachings in this instance, for the opinion discloses that, unlike here, the pickup was searched only after the victim identified the accused and informed the police that he had assaulted her and had a weapon in the pickup he occupied. Thus, there, unlike here, the police had specific, articulable facts which reasonably warranted the accused's detention and the resulting search and seizure.

The suppression order is affirmed.