NO. 07-01-0488-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JUNE 14, 2002
_____

SEVERIANO A. JARAMILLO,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2001-435,545; HON. BRADLEY S. UNDERWOOD, PRESIDING
_____

Before BOYD, C.J., QUINN and REAVIS, JJ.

Severiano A. Jaramillo (appellant) appeals his conviction for possessing a controlled substance. His sole point of error concerns the trial court's denial of his motion to suppress evidence. The court purportedly erred in granting the motion since the police officer who actually arrested appellant did not witness or otherwise perceive the commission of the offense and, therefore, lacked probable cause to make a warrantless arrest. We reverse.

## *Background*

A team of police officers gathered to conduct a "reverse sting operation."  Pursuant thereto, one of the group (Officer Robison) posed undercover as an individual interested in selling stolen canisters of freon and handguns.[1]  The intended target was a business located at 312 Buddy Holly Ave.  Robison was wearing a microphone, and the transaction was to be monitored by two teams of officers located within a block or two of the establishment.  At least one other officer, Pat Kelly, was also in the vicinity to help.

Robison approached the business and met with appellant.  The two initially met outside, adjacent to the store.  Appellant was told that the freon was stolen and he expressed his desire to buy it.  He did not care to buy the handguns, though.  Yet, he suggested that another individual, Ray Barraza, may be interested in them and directed Robison to drive around to the back of the store.  Robison did so and subsequently met with Barraza and an individual name Leija outside, behind the business.  Negotiations between Barraza and Robison ensued, culminating in Barraza buying a handgun for $125.  When the Barraza transaction was completed, appellant indicated that he was not going to purchase the freon. Robison then left.  As he did so, he signaled in some manner to the other officers that the transaction was complete and thereby informed them to make the "bust."

Kelly did not personally witness the signal.  Neither did he see or hear the transaction and negotiations occurring between Robison, appellant, Barraza or anyone else at the business.  Instead, other officers who apparently saw Robison's signal

---

[1]None of the items were actually stolen, according to the officers.  They were acquired from third-parties or the police property room for purposes of the operation.

2

broadcast same over a police radio, and Kelly acted upon that. Not knowing who appellant "was at the time," Kelly nonetheless entered the store, saw a male and female Hispanic, placed the male (appellant) "under arrest," and "handcuffed him with a pair of [ ] police issued handcuffs." The woman (Bertha Cruz) was not immediately arrested. Her arrest was delayed, according to Kelly, because "in listening to the LPD radio, [he] only had information on male, Hispanic males, involved in this theft investigation, not the female." However, after observing Cruz "commit a criminal activity in his presence" he too arrested her.

No other individuals were located on the premises. Furthermore, a detective named Dwayne Gerber appeared at the scene and conducted a search upon appellant's person. At that point, a small object was discovered in one of appellant's pockets. The object was later determined to be cocaine. And, the possession of that particular substance led to appellant's prosecution.

Eventually, appellant moved to suppress the evidence obtained as a result of the search. He argued, among other things, that the search was improper because Kelly lacked probable cause to make the arrest. Further, he purportedly lacked such cause since he did not witness the commission of any offense. At the suppression hearing, the circumstances described above were revealed. Furthermore, Kelly was asked whether he relied on the information imparted by Robison "when [he] went in the front door of this business to arrest the Hispanic males that had been involved in the sale of the firearms . . . ." Kelly replied that he obtained the information "through him." He "got information from other officers who [were] recording . . . Robison's transactions." He "never spoke to Robison" personally. He "never heard what he said." Instead, Kelly's information was

3

obtained "from the surveillance officers who were listening," who were "relying on and going - - going from there on - - based on what Detective Robison had told them through the bust signal." What information was imparted through the bust signal went unmentioned by Kelly and every other witness at the hearing. Moreover, it was revealed by Gerber, who "was assigned to operate the recording unit and record the conversation between . . . Robison and whoever he met with," that the equipment somehow malfunctioned. They "had a lot of problems getting a clear audio signal." It "was just . . . we got a lot of static," he continued. And, when asked if he could "even hear . . . Robison over the transmitter at times," Gerber replied "[j]ust very intermittently." Furthermore, that which was purportedly heard "very intermittently" also went unmentioned. However, Gerber did confirm that at the time he began his search of appellant, Kelly already had placed appellant under arrest. Finally, evidence appears of record indicating that while appellant consented to the search of the business premises after he was arrested, nothing indicates that he consented to the search of his person prior to or after the arrest.

### Standard of Review

The pertinent standard of review needs little discussion. We find it sufficient to cite the parties to *Richardson v. State*, 39 S.W.3d 634, 637 (Tex. App.–Amarillo 2000, no pet.) and *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App.1997) for a discussion of same. Furthermore, when evidence illustrates that the arrest of appellant was made without a warrant, the burden lies with the State to prove the legitimacy of the arrest. *Mercado v. State,* 972 S.W.2d 75, 78 (Tex. Crim. App. 1998); *Richardson v. State,* 39 S.W.3d at 638.

Next, it is clear that an officer must have probable cause to arrest an individual without an arrest warrant. Furthermore, probable cause to conduct such an arrest exists when

> . . . at [the] moment [of arrest] the facts and circumstances within the [arresting] officer's knowledge and of which (he) had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the (arrested person) had committed or was committing an offense.

*Shipman v.* State, 935 S.W.2d 880, 883-84 (Tex. App.–San Antonio 1996, pet. ref'd), citing *Rance v. State*, 815 S.W.2d 633, 635-36 (Tex. Crim. App. 1991). As can be readily seen, the definition consists of two parts. One pertains to the existence of circumstances which justify the belief that a crime occurred or is occurring, while the other involves the existence of indicia sufficient to justify a belief that the person seized committed or was committing the crime. The satisfaction of both elements is required before the arrest can be found legitimate. Yet, this does not mean that the officer making the arrest must have personal knowledge that a crime occurred or that the person he arrested committed it. This is true because he may act at the direction of others, such as through a broadcast. And, when that happens, the focus lies upon the information known to the officer who made the broadcast or upon whose directive the arresting officer acted. *Martinez v. State*, 72 S.W.3d 76, 81 (Tex. App.–Amarillo 2002, no pet.). In other words, the collective knowledge of those involved in the arrest determines the legitimacy of the arrest.

Nevertheless, the collective knowledge of all the officers does not alter the definition of probable cause described above. Instead, it merely allows the arresting officer to act based upon the knowledge of and circumstances seen by other officers. So, the arresting officer remains prohibited from simply arresting anyone at whim. On the contrary, he must

5

still have legitimate basis to seize the particular person he seized despite the collective knowledge of every other officer. *See Rance v. State*, 815 S.W.2d at 635-36 (stating that though the arresting officer had reasonably trustworthy information that someone had committed an offense, the question remained as to whether the person seized matched the description of the offender disclosed in the broadcast). And, that basis must exist at the time of the seizure for information or knowledge subsequently acquired cannot be used to legitimize a prior arrest. *Torres v. State*, 868 S.W.2d 798, 801 (Tex. Crim. App. 1993). With this said, we turn to the cause before us.

### *Application of Standard*

On appeal, no one disputes that the record before us contains evidence upon which a reasonably prudent officer could infer that a crime had occurred. Similarly undisputed is that appellant was involved in the commission of that crime. Instead, the controversy concerns whether Kelly had sufficient basis to arrest appellant at the time of the arrest. And, regarding the matter, the record depicts that at the time of the arrest Kelly knew (either personally or otherwise[2]) only that 1) a reverse sting operation had occurred, 2) those involved in the sting were apparently "Hispanic males," 3) Officer Robison had given the bust signal, and 4) the person Kelly arrested was on the premises after Robison signaled for the arrests to proceed and that he was a Hispanic male. Yet, nothing of record discloses that Kelly knew the identity of those who actually participated in the transactions which constituted the criminal acts (other than the identity of Robison, of course). Nor does the record indicate that Robison broadcast a description of the suspects prior to appellant's

---

[2]Hearsay may be used to establish probable cause. *Hinojosa v. State,* 4 S.W.3d 240, 249 (Tex. Crim. App. 1999), citing *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

6

arrest. Even if he had, it is questionable whether anyone would have heard it given the malfunctioning equipment. And, to the extent that Kelly heard some reference to "Hispanic males" while "listening to the LPD radio," nothing of record illustrates who imparted that information or why they concluded that "Hispanic males" were involved in the transaction.

Nor do we have of record evidence regarding the actual number of "Hispanic males" on the premises immediately prior to the arrest or during the sting operation. Robison spoke of encountering three: appellant, Barraza, and Leija. Yet, if they were the only three there is unknown. Nor does the record suggest that Kelly searched the premises for others at any time before he arrested appellant. Again, he merely entered the building, saw a Hispanic male and female, and arrested the male; and, Kelly candidly stated that he did not know who appellant was at the time. So, no evidence exists to permit one to reasonably infer that appellant must have been one of the participants in the criminality because Kelly searched for other Hispanics and found none.[3] Again, the record illustrates that he simply arrested the first Hispanic male he encountered on the premises.

The circumstances before us liken to those found deficient in *Rance*. There, a group of officers were engaged in a drug operation. One witnessed a sale of contraband and "radioed a description and location of the two sellers" to a van in which sat officer Robinette. The latter immediately proceeded to the described locale and observed Rance and a companion. The two were then arrested by Robinette. The Court of Criminal Appeals found the arrest to be illegal. It did so because the State failed to tender into

---

[3]That two of the three individuals with whom Robison dealt had left the premises when the raid transpired also proves troublesome. At the very least, that circumstance suggest two things. The first is that some time lapsed between the transactions conducted by Robison and the subsequent raid and, second, that the time was sufficient to allow individuals to leave the premises unseen by others.

evidence the description provided to Robinette by the officer who witnessed the sale. "Without being presented with that description, it [was] impossible for a reviewing court to determine whether a prudent man would have believed [Rance] was one of the sellers . . .," the court held. *Rance v. State*, 815 S.W.2d at 635. And, that Rance was found at the locale along with another person immediately after the sale occurred did not warrant a different outcome. Here, we have no evidence of a description of those involved in the transactions with Robison, except for some vague information about "Hispanic males" made by some unknown source and garnered by unknown means. Given this, appellant's location at the crime scene around the time the crime occurred was not enough evidence upon which a reasonably prudent officer could infer that *appellant* committed a criminal act, thereby justifying an arrest.[4] In short, the State failed to present sufficient evidence to support the existence of probable cause to arrest appellant without a warrant.

To the extent that probable cause was lacking for the arrest, the trial court erred in refusing to suppress evidence obtained via the ensuing search. Furthermore, it was that search which culminated in the discovery of the controlled substance upon which appellant's conviction was founded. Thus, we cannot say that the error was harmless. Accordingly, we reverse the judgment and remand the cause.

Brian Quinn
Justice

Do not publish.

---

[4]Whether Kelly would have lacked reasonable suspicion to detain appellant for investigatory purposes and conduct a protective pat-down search is not before us. Nothing of record indicates that he questioned appellant in any way before placing him in hand-cuffs and arresting him. *See State v. Mora*, 872 S.W.2d 803, 806 (Tex. App.–Amarillo 1994, no pet.) (holding that because the evidence does not reveal that "an investigation was made" before, during or after the search and seizure, it could not be said that the officers were merely detaining Mora for investigative purposes).