NO. 07-02-0359-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



JANUARY 2, 2003



______________________________




THE STATE OF TEXAS, APPELLANT



V.



WILLIAM L. WARFEL, APPELLEE




_________________________________



FROM THE COUNTY COURT AT LAW NO. 2 OF LUBBOCK COUNTY;



NO. 2002-479,457; HONORABLE DRUE FARMER, JUDGE



_______________________________



Before QUINN and REAVIS, JJ., and BOYD, SJ. (1)

 In this interlocutory appeal, the State challenges the trial court's suppression of oral
statements made by appellee William Warfel to a Lubbock police officer. Agreeing with
the State's challenge, we reverse the trial court's suppression order.

 The incident giving rise to appellee's prosecution occurred shortly after midnight on
April 12, 2002. Lubbock police received a report of an individual with dark, curly hair and
wearing dark shorts, fleeing from the scene of a domestic disturbance. Lubbock Police
Officer Terry Farley was responding to the call when he saw a man meeting the suspect's
description walking across a parking lot about two blocks from the scene of the
disturbance. Farley drove into the parking lot and approached the man, later determined
to be appellee. As he neared appellee, Farley asked through his open car window, "where
are you going?" Appellee stopped, turned toward the officer and raised his hands over his
head.

 Farley stopped his car and got out of it to speak with appellee, who started walking
toward him. Farley asked, "what is going on this evening?" It is undisputed that appellee
responded, "you know, just fighting with the old lady." Because of the reply, Farley,
convinced appellee was the person he had been advised was involved in the disturbance,
took appellee into custody, and returned with him to the scene of the disturbance to
continue his investigation.

 Appellee was charged with the misdemeanor offense of assault. At the pretrial
hearing on appellee's motion to suppress the statement to Farley, Farley and appellee
testified. At the conclusion of the hearing, the trial court found appellee was "in custody"
for the purposes of the Fifth Amendment to the Federal Constitution and article 38.22 of
the Code of Criminal Procedure. He also found that at the time in question, Farley did not
intend to elicit an incriminating response but, the court concluded, regardless of the
officer's intent, because appellee's answer was incriminating, his statement must be
suppressed.

 In a single issue, the State asserts the trial court erred in its action because
appellee was not in custody at the time he made the admission, nor was he being
interrogated at the time. See Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (Vernon Supp.
2003) (authorizing State's appeal from an order suppressing evidence in certain
circumstances).

 In Dowthitt v. State, 931 S.W.2d 244 (Tex.Crim.App. 1996), the court explicated the
standards for determining when a statement is the result of custodial interrogation. In
doing so, it pointed out that a person is only "in custody" if, under the surrounding
circumstances, a reasonable person would believe their freedom of movement was
"restrained to the degree associated with a formal arrest." Id. at 254. The "reasonable
person" referred to in the standard presumes an innocent person. Florida v. Bostick, 501
U.S. 429, 438, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). The determination of custody is
not formulaic, but must be made on an ad hoc basis after considering all of the objective
circumstances. Dowthitt, 931 S.W.2d at 255. In Stansbury v. California, 511 U.S. 318,
324, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994), the Supreme Court held that the subjective
belief of the police is irrelevant unless that intent is expressed or otherwise manifested to
the suspect.

 The Dowthitt court enumerated four general situations which may amount to
"custody." They are: 1) when the suspect is physically deprived of his freedom of action
in any significant way; 2) when a law enforcement officer tells the suspect that he cannot
leave; 3) when law enforcement officers create a situation that would lead a reasonable
person to believe that his freedom of movement has been significantly restricted; and 4)
when there is probable cause to arrest and the officer does not tell the suspect that they
are free to leave. Dowthitt, 931 S.W.2d at 255 (citing Shiflet v. State, 732 S.W.2d 622, 629
(Tex.Crim.App. 1985).

 The first two of the factors discussed in Dowthitt are not applicable here because
the undisputed evidence establishes that appellee was not physically restrained until after
he made the statement in question, nor did Officer Farley tell him he was not free to leave. 
The fourth factor is also not applicable here. Probable cause to arrest exists when the
facts and circumstances within the officer's knowledge, and of which he has reasonably
trustworthy information, are sufficient in themselves to warrant a man of reasonable
caution in the belief that a particular person has committed or is committing an offense.
Amores v. State, 816 S.W.2d 407, 413 (Tex.Crim.App. 1991). In this case, Officer Farley
testified that he simply approached appellee because he met a vague description given
by another officer of a man with dark shorts and curly hair. That information was not
sufficient to constitute probable cause to arrest appellee. Farley also averred that it is not
unusual for people to jokingly put their hands up when being approached by police, so he
did not attribute any particular significance to that act.

 It was only after appellee responded that he had been fighting with his wife that
Farley had sufficient information to support a reasonable belief that appellee was the
suspect in connection with the domestic disturbance. Thus, because the trial court
suppressed the statement made before that time, the fourth situation discussed by the
Dowthitt court is not applicable. 

 The third situation, i.e., when law enforcement officers create a situation that would
lead a reasonable person to believe his freedom of movement has been significantly
restricted, is the one we need to discuss here. The cases discussing this type of situation
make it clear that the reviewing court is to look at more than simply a restriction on
freedom of movement. That obligation is illustrated by the analysis applied by the Court
in Berkemer v. McCarty, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). In that
case, the Court addressed the question if a routine traffic stop by police amounted to
"custody" within the purview of its decision in Miranda v. Arizona, 364 U.S. 436, 444, 86
S.Ct. 1602, 16 L.Ed.2d 694 (1966). In the course of its discussion, the Court recognized
that any traffic stop "significantly curtails the 'freedom of action' of the driver and
passengers," and constitutes a "seizure" within the meaning of the fourth amendment. 
Berkemer, 468 U.S. at 436. However, in the course of its discussion, it emphasized that
a restriction of one's freedom of movement does not preclude consideration of the context
of the restriction. Id. at 437. The Court noted that an ordinary traffic stop is brief in nature
as contrasted to a stationhouse interrogation. It also observed that the public nature of a
traffic stop distinguishes it from the type of "police dominated" atmosphere considered in
Miranda. Id. at 438-39. The Court concluded that a traffic stop is comparable to a Terry (2)-type investigative stop and that drivers (and passengers) detained during an ordinary
traffic stop are not "in custody" for the purposes of Miranda. Id. at 439. 

 The Berkemer Court's reference to Terry is instructive in our determination of this
question. As did the officer in Terry, Farley had no more than a suspicion that appellee
was the person suspected of committing an offense in the area. Farley approached
appellee to confirm or dispel his suspicion. Thus, his stop and inquiry were reasonably
related in scope to the justification for their initiation. See United States v. Brignoni-Ponce,
422 U.S. 873, 883, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). The intrusion here was less
than that involved in Terry, where the officer conducted a pat-down of the suspect's body. 
Terry, 392 U.S. at 6. Here, all the officer did was engage appellee in what was a facially
innocuous conversation. In the Berkemer case, the Court noted there was no "suggestion
in our opinions that Terry stops are subject to the dictates of Miranda." Berkemer, 468
U.S. at 440. The stop we are considering here was clearly a Terry-type stop. Thus, the
Berkemer explication is dispositive of appellee's argument. The State's issue is sustained. 
The trial court's suppression order is reversed and the cause remanded to the trial court
for further proceedings in accordance with this opinion. 

 John T. Boyd

 Senior Justice 


Do not publish.
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2002). 
2. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).



="BR2">

 Although the evidence shows that appellant in fact intentionally harmed Kimberly,
her testimony does not constitute evidence that appellant threatened harm in this case. 
She initially testified she did not feel threatened. The prosecutor asked two hypothetical
questions not specifically directed at the facts in the present case. When asked a second
time whether she felt threatened while appellant was hurting her, Kimberly answered in the
affirmative. In the context of section 36.06(a) and under the plain and ordinary definition
of the term threaten, one cannot simultaneously be threatened with harm while the
threatened harm is being inflicted. See Tex. Pen. Code § 36.06(a). Although the jury, as
trier of fact, may choose to believe all, some, or none of a witness's testimony, Kimberly's
testimony fails to establish that the threat preceded the actual harm. This being the case,
we do not find it sufficient to establish appellant threatened harm as alleged. 

 Finally, the State claims, without citing any supporting authority, that just because
the evidence may be sufficient to support the offense of assault, it does not mean that
appellant did not threaten Kimberly by "striking her with his hands or his foot." We
disagree. In the absence of contrary authority, we hold that, by definition, in order for an
act to constitute a threat to harm under section 36.06(a) , the act must precede the actual
infliction of harm.

 Reviewing the State's evidence in the light most favorable to the prosecution, we
do not find any evidence in the record which would enable a rational jury to conclude that
appellant threatened to harm Kimberly due to her status as a prospective witness. Instead,
the evidence suggests that appellant retaliated against Kimberly by assaulting her for
giving a statement to the police. However, appellant was not charged with retaliation by
harm. There is no evidence that appellant made any threatening communication or
expression, verbal or otherwise, regarding his intent to harm Kimberly as alleged. As such,
we find the evidence to be legally insufficient to prove retaliation by threat. Appellant's first
point is sustained. Our disposition of this point pretermits our consideration of appellant's
remaining points.

 We reverse the trial court's judgment and render a judgment of acquittal.


 Don H. Reavis

 Justice




Do not publish.


1. The events that were alleged to have occurred in Dallas were not disclosed at trial.
2. Similarly, the jury charge instructed that "a person commits the offense of retaliation
if he intentionally or knowingly threatens to harm another by an unlawful act in retaliation
for or on account of the service of a person as a prospective witness."