NO. 07-02-0359-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

JANUARY 2, 2003

_____


THE STATE OF TEXAS, APPELLANT

V.

WILLIAM L. WARFEL, APPELLEE

_____

FROM THE COUNTY COURT AT LAW NO. 2 OF LUBBOCK COUNTY;

NO. 2002-479,457; HONORABLE DRUE FARMER, JUDGE

_____

Before QUINN and REAVIS, JJ., and BOYD, SJ.[1]

In this interlocutory appeal, the State challenges the trial court's suppression of oral statements made by appellee William Warfel to a Lubbock police officer. Agreeing with the State's challenge, we reverse the trial court's suppression order.

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2002).

The incident giving rise to appellee's prosecution occurred shortly after midnight on April 12, 2002. Lubbock police received a report of an individual with dark, curly hair and wearing dark shorts, fleeing from the scene of a domestic disturbance. Lubbock Police Officer Terry Farley was responding to the call when he saw a man meeting the suspect's description walking across a parking lot about two blocks from the scene of the disturbance. Farley drove into the parking lot and approached the man, later determined to be appellee. As he neared appellee, Farley asked through his open car window, "where are you going?" Appellee stopped, turned toward the officer and raised his hands over his head.

Farley stopped his car and got out of it to speak with appellee, who started walking toward him. Farley asked, "what is going on this evening?" It is undisputed that appellee responded, "you know, just fighting with the old lady." Because of the reply, Farley, convinced appellee was the person he had been advised was involved in the disturbance, took appellee into custody, and returned with him to the scene of the disturbance to continue his investigation.

Appellee was charged with the misdemeanor offense of assault. At the pretrial hearing on appellee's motion to suppress the statement to Farley, Farley and appellee testified. At the conclusion of the hearing, the trial court found appellee was "in custody" for the purposes of the Fifth Amendment to the Federal Constitution and article 38.22 of the Code of Criminal Procedure. He also found that at the time in question, Farley did not

2

intend to elicit an incriminating response but, the court concluded, regardless of the officer's intent, because appellee's answer was incriminating, his statement must be suppressed.

In a single issue, the State asserts the trial court erred in its action because appellee was not in custody at the time he made the admission, nor was he being interrogated at the time. *See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (Vernon Supp. 2003) (authorizing State's appeal from an order suppressing evidence in certain circumstances).

In *Dowthitt v. State*, 931 S.W.2d 244 (Tex.Crim.App. 1996), the court explicated the standards for determining when a statement is the result of custodial interrogation. In doing so, it pointed out that a person is only "in custody" if, under the surrounding circumstances, a reasonable person would believe their freedom of movement was "restrained to the degree associated with a formal arrest." *Id.* at 254. The "reasonable person" referred to in the standard presumes an innocent person. *Florida v. Bostick*, 501 U.S. 429, 438, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). The determination of custody is not formulaic, but must be made on an *ad hoc* basis after considering all of the objective circumstances. *Dowthitt,* 931 S.W.2d at 255. In *Stansbury v. California*, 511 U.S. 318, 324, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994), the Supreme Court held that the subjective belief of the police is irrelevant unless that intent is expressed or otherwise manifested to the suspect.

The *Dowthitt* court enumerated four general situations which may amount to "custody." They are: 1) when the suspect is physically deprived of his freedom of action in any significant way; 2) when a law enforcement officer tells the suspect that he cannot leave; 3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; and 4) when there is probable cause to arrest and the officer does not tell the suspect that they are free to leave. *Dowthitt*, 931 S.W.2d at 255 (*citing Shiflet v. State,* 732 S.W.2d 622, 629 (Tex.Crim.App. 1985).

The first two of the factors discussed in *Dowthitt* are not applicable here because the undisputed evidence establishes that appellee was not physically restrained until after he made the statement in question, nor did Officer Farley tell him he was not free to leave. The fourth factor is also not applicable here. Probable cause to arrest exists when the facts and circumstances within the officer's knowledge, and of which he has reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that a particular person has committed or is committing an offense. *Amores v. State*, 816 S.W.2d 407, 413 (Tex.Crim.App. 1991). In this case, Officer Farley testified that he simply approached appellee because he met a vague description given by another officer of a man with dark shorts and curly hair. That information was not sufficient to constitute probable cause to arrest appellee. Farley also averred that it is not unusual for people to jokingly put their hands up when being approached by police, so he did not attribute any particular significance to that act.

4

It was only after appellee responded that he had been fighting with his wife that Farley had sufficient information to support a reasonable belief that appellee was the suspect in connection with the domestic disturbance. Thus, because the trial court suppressed the statement made before that time, the fourth situation discussed by the *Dowthitt* court is not applicable.

The third situation, *i.e.*, when law enforcement officers create a situation that would lead a reasonable person to believe his freedom of movement has been significantly restricted, is the one we need to discuss here. The cases discussing this type of situation make it clear that the reviewing court is to look at more than simply a restriction on freedom of movement. That obligation is illustrated by the analysis applied by the Court in *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). In that case, the Court addressed the question if a routine traffic stop by police amounted to "custody" within the purview of its decision in *Miranda v. Arizona*, 364 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In the course of its discussion, the Court recognized that any traffic stop "significantly curtails the 'freedom of action' of the driver and passengers," and constitutes a "seizure" within the meaning of the fourth amendment. *Berkemer,* 468 U.S. at 436. However, in the course of its discussion, it emphasized that a restriction of one's freedom of movement does not preclude consideration of the context of the restriction. *Id.* at 437. The Court noted that an ordinary traffic stop is brief in nature as contrasted to a stationhouse interrogation. It also observed that the public nature of a traffic stop distinguishes it from the type of "police dominated" atmosphere considered in

5

*Miranda*. *Id*. at 438-39. The Court concluded that a traffic stop is comparable to a *Terry*[2]-type investigative stop and that drivers (and passengers) detained during an ordinary traffic stop are not "in custody" for the purposes of *Miranda*. *Id*. at 439.

The *Berkemer* Court's reference to *Terry* is instructive in our determination of this question. As did the officer in *Terry*, Farley had no more than a suspicion that appellee was the person suspected of committing an offense in the area. Farley approached appellee to confirm or dispel his suspicion. Thus, his stop and inquiry were reasonably related in scope to the justification for their initiation. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 883, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). The intrusion here was less than that involved in *Terry,* where the officer conducted a pat-down of the suspect's body. *Terry,* 392 U.S. at 6. Here, all the officer did was engage appellee in what was a facially innocuous conversation. In the *Berkemer* case, the Court noted there was no "suggestion in our opinions that *Terry* stops are subject to the dictates of *Miranda*." *Berkemer,* 468 U.S. at 440. The stop we are considering here was clearly a *Terry*-type stop. Thus, the *Berkemer* explication is dispositive of appellee's argument. The State's issue is sustained. The trial court's suppression order is reversed and the cause remanded to the trial court for further proceedings in accordance with this opinion.

John T. Boyd
Senior Justice

Do not publish.

---

[2]*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

6