

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00410-CR

LATOYA C. GIPSON                                                    APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

## FROM COUNTY CRIMINAL COURT NO. 1 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

After the trial court denied Appellant Latoya C. Gipson's motion to suppress, she pleaded guilty to the offense of failure to identify. The trial court sentenced her to ten days' confinement to be served on labor detail. In a single issue, Gipson argues that the trial court abused its discretion by denying her

---

[1]*See* Tex. R. App. P. 47.4.

motion to suppress her statements because, according to Gipson, she made them while unlawfully detained.  We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The following facts were revealed at the suppression hearing.  Fort Worth Police Officer Nathan Harris was in field training as a patrol officer in December 2011.  He and his field training officer, Officer Johnston, were patrolling a high crime area of east Fort Worth around 10:30 p.m. in December 2011.  They were specifically training on consensual encounters.  The officers noticed a car parked in the parking lot of an apartment complex known for drug activity; exhaust was coming from the car's exhaust pipe, and the car's lights were off.  The officers could not tell if anyone was inside the car.  The officers drove past the car three times over the next several minutes and decided to stop.  Officer Harris testified that the car was legally parked along the curb and that he knew of "nothing to connect this car to any criminal activity at all" when he approached it.  He testified that they decided to stop to investigate whether the car's occupants were engaged in a drug transaction or were using drugs inside the car.  Officer Johnston testified that they decided to stop and investigate whether anyone was inside the car.  The officers did not turn on their squad car's overhead lights.

As the officers approached the car, the driver, Gipson, rolled down her window.  Officer Harris introduced himself and asked what "they" were doing.[2]

---

[2]The record is unclear about the number and identity of the other individual or individuals in the car with Gipson.  She testified that she was with her "two

Gipson responded that they were waiting for someone to bring them gas money. Officer Harris asked why the vehicle was running if it needed gas. Gipson told him that the vehicle was not running, which he knew to be false because he had seen exhaust coming from the car. He also asked if Gipson lived in the apartment complex, and Gipson said she did not. Because the car was parked in a high crime area and because Gipson had lied about the car not running, the officers decided to detain her and investigate further. Officer Johnston said that if Gipson had driven off, the officers "might" have stopped her but that he had not made up his mind yet.

Gipson testified that she was sitting in her car outside of her grandmother's house waiting on her daughter-in-law to bring her some gas money so that she could drive to her house in Crowley. She saw the officers circling the parking lot and knew that officers tend to stop vehicles in that area after approximately 10:00 at night. Gipson testified that when the officers stopped behind her car, they turned on the overheard lights to their squad car. Gipson said that Officer Harris approached and asked for her name. Gipson testified that she did not feel free to leave and also that Officer Harris told her that she was not free to leave. She did not give the officer her name and instead asked him what the problem was. Officer Harris continued asking for her name. She never gave him her name until

sons," and Officer Johnston testified that Gipson and one other person were in the car.

3

he searched her and placed her in the police car; at that point, she gave him a fictitious name—Shawanna Crevice.

After the three witnesses testified at the suppression hearing, the State argued that the officers had conducted a consensual encounter when they approached Gipson's vehicle and asked her what she was doing; the State did not dispute that the officers lacked reasonable suspicion when they approached Gipson's vehicle. Defense counsel argued that it was not a consensual encounter. The parties did not present argument on Gipson's continued detention based on her lying about her car not running.

## III. STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006).

4

We must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819.

## IV. CONSENSUAL ENCOUNTER

Gipson argues in part of her sole issue that the officers' initial interaction with her was an investigative detention unsupported by reasonable suspicion, rather than a consensual encounter. She points to her testimony that she did not feel free to leave and that she asked the officers why they were questioning her, and Officer Johnston's own testimony that he and Officer Harris had conducted an "investigative stop."[3]

---

[3]Officer Johnston used the term "investigative stop" at the suppression hearing, but he also testified that he was training Officer Harris on consensual encounters that night and that they decided to stop and investigate why Gipson's car was running "[s]o [they] walked up and just talked to the . . . occupants." Moreover, Officer Johnston's labeling their encounter with Gipson as an "investigative stop" is not the controlling factor in determining whether the specific

5

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. U.S. Const. amend. IV. Consensual police-citizen encounters do not implicate Fourth Amendment protections. *See Florida v. Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386 (1991); *State v. Woodard*, 341 S.W.3d 404, 411 (Tex. Crim. App. 2011). Law enforcement is free to stop and request information from a fellow citizen without justification. *Woodard*, 341 S.W.3d at 411. And citizens may, at will, terminate consensual encounters. *Id.* Even when an officer does not communicate to the citizen that the request for information may be ignored, the citizen's acquiescence to an officer's request does not cause the encounter to lose its consensual nature. *Id.* Only when the implication arises that an officer's authority cannot be ignored, avoided, or ended, does a Fourth Amendment seizure occur. *Garcia-Cantu*, 253 S.W.3d at 243.

Determining whether specific facts amount to a detention under the Fourth Amendment or a consensual police-citizen encounter "is subject to de novo review because that is an issue of law—the application of legal principles to a specific set of facts." *Id.* at 241. The occurrence of a consensual encounter is determined by the totality of the circumstances and "'whether a reasonable

facts amounted to an investigative detention or a consensual encounter. *Accord Amores v. State*, 816 S.W.2d 407, 412 (Tex. Crim. App. 1991) (holding that officer's opinion that defendant was under arrest "is not the controlling factor"); *Hoag v. State*, 728 S.W.2d 375, 378–79 (Tex. Crim. App. 1987) ("[T]he officer's opinion is a factor to be considered, along with the other facts and circumstances of the detention, in determining whether an arrest has taken place.").

person would feel free to decline the officer's requests or otherwise terminate the encounter.'" *St. George v. State*, 197 S.W.3d 806, 819 (Tex. App.—Fort Worth 2006), *aff'd*, 237 S.W.3d 720 (Tex. Crim. App. 2007) (quoting *Bostick*, 501 U.S. at 436, 111 S. Ct. at 2387). The time, place, and surrounding circumstances must be taken into account, but the officer's conduct is the most important factor in determining whether a police-citizen interaction is a consensual encounter or a Fourth Amendment seizure. *State v. Castleberry*, 332 S.W.3d 460, 467 (Tex. Crim. App. 2011). Circumstances that may indicate a police-citizen interaction is a seizure, rather than a consensual encounter, include the threatening presence of several officers, the officer's display of a weapon, physical touching of the citizen by the officer, the officer's words or tone of voice indicating that compliance with the officer's requests might be compelled, or flashing lights or blocking a suspect's vehicle. *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877 (1980); *State v. Woodard*, 314 S.W.3d 86, 94 (Tex. App.—Fort Worth 2010), *aff'd*, 341 S.W.3d at 404.

Here, viewing the evidence from the suppression hearing in the light most favorable to the trial court's ruling, the record of the suppression hearing demonstrates that the officers did not turn on the overhead lights to their squad car when they stopped behind Gipson's car. They did not draw their weapons when they approached her car. Gipson rolled down her window as the officers approached. After identifying himself, Officer Harris asked Gipson what she was doing and why she was sitting in a parked, running car. Gipson immediately

7

answered that she was waiting on someone to bring her gas money and that her car was not running. The officers did not tell her to get out of the vehicle or otherwise indicate to her that she was not free to leave or that the requested information might be compelled.

We also must consider the time, place, and surrounding circumstances. *See Castleberry*, 332 S.W.3d at 468. The officers approached Gipson at 10:30 at night in an apartment complex known for high crime activity. Gipson testified that police "get real bad" in that area at night and pull over anyone leaving the area; she said that she has been taught to cooperate with police "so that they just leave you alone." Gipson testified that she probably would be shot if she walked away from an officer while he was talking to her. Although these circumstances tend to show that the interaction was not consensual, the officers' conduct is the most important consideration. *See id.* Moreover, we must ask what a reasonable person in Gipson's position would have felt. *See St. George*, 197 S.W.3d at 819.

A review of the totality of the circumstances demonstrates that a reasonable person in Gipson's position would have felt free to decline to answer Officer Harris's questions. *See Mendenhall*, 446 U.S. at 554, 100 S. Ct. at 1877; *Woodard*, 341 S.W.3d at 413–14; *Castleberry*, 332 S.W.3d at 468 ("Because an officer is just as free as anyone to question, and request identification from, a fellow citizen, Officer Barrett's conduct shows that the interaction was a consensual encounter."); *see also State v. Murphy*, No. 02-06-00267-CR, 2007

8

WL 2405120, at *3 (Tex. App.—Fort Worth Aug. 23, 2007, no pet.) (mem. op., not designated for publication) (in holding that officer's interaction was a consensual encounter, explaining that no evidence existed that officer displayed his weapon, physically threatened appellant, used harsh language or touch, activated flashing lights, or prevented appellant from leaving). Viewing the evidence from the suppression hearing in the light most favorable to the trial court's ruling, we hold that the officers conducted a consensual encounter by approaching Gipson's car and asking what she was doing and why her car was running. *See Garcia-Cantu*, 253 S.W.3d at 241; *Wiede*, 214 S.W.3d at 24; *Kelly*, 204 S.W.3d at 818. To the extent that Gipson argues in her sole issue that the officers' initial interaction with her was not a consensual encounter, we overrule it.

## V. CONTINUED DETENTION

Gipson's primary argument in her sole issue is that her continued detention after she told the officers that her car was not running was not supported by reasonable suspicion. She argues that her lying to the officers about her car not running did not provide a basis for reasonable suspicion for her continued detention, during which she gave a false name to the officers. The State argues that this argument does not comport with her argument at the trial level.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling unless the specific grounds are apparent from the context of

9

the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Clay v. State*, 361 S.W.3d 762, 765 (Tex. App.—Fort Worth 2012, no pet.). The two main purposes of requiring a specific objection are to inform the trial judge of the basis of the objection so that he has an opportunity to rule on it and to allow opposing counsel to remedy the error. *Clark*, 365 S.W.3d at 339; *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009). In raising the complaint on appeal, the party must ensure that the complaint is the same as the complaint or objection made during trial. *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App.) (citing *Thomas v. State*, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986)), *cert. denied*, 502 U.S. 870 (1991).

A motion to suppress is simply a specialized objection to the admissibility of evidence. *Rothstein v. State*, 267 S.W.3d 366, 373 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (citing *Galitz v. State*, 617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981) (op. on reh'g)). A party can forfeit error if (1) her suppression motion makes global arguments supported only by constitutional and statutory provisions, and (2) she fails to argue any specified grounds during the hearing on the motion to suppress. *See Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005), *cert. denied*, 181 S.W.3d 359 (2006).

Gipson's motion to suppress alleged generally that she was detained without a lawful warrant, reasonable suspicion, or other lawful authority in violation of her rights under the United States and Texas constitutions. The

testimony presented at the suppression hearing dealt almost exclusively with the facts of the initial encounter up until the officers decided to detain her because she lied about her car not running; neither defense counsel nor the State questioned either officer about the details of the stop after Gipson lied. In fact, during the State's direct examination of Officer Harris and after he testified that he and Officer Johnston had decided to investigate further because Gipson had lied, the prosecutor said, "And, Your Honor, if I can clarify from the Defense, I think they are challenging up to this point, and we can stop here?" Defense counsel replied, "Yes, Your Honor," and the prosecutor asked no further questions of Officer Harris on direct.[4] Gipson's sole argument during the suppression hearing was that the officers' initial encounter with her was not consensual.[5]

Because Gipson's motion to suppress made only global arguments in favor of suppression and because her sole argument at the hearing on her motion was that the initial stop was not a consensual encounter, she forfeited any complaint

---

[4]Furthermore, when Gipson began testifying about the details of the stop after she told the officers that her car was not running, defense counsel stopped her, saying that she was "trying not to go past the agreed line that we drew." The prosecutor responded, "No, go wherever you want."

[5]Defense counsel argued that Officer Harris "said it was an investigative stop. He said there was nothing going on. There was no violation of the law. There was no indication of a violation of the law except that this was a bad neighborhood. And the courts have been clear that that alone is not enough."

about the officers' continued detention of her after she lied to them.[6]  *See* Tex. R. App. P. 33.1(a)(1); *Swain*, 181 S.W.3d at 365.  We overrule the remainder of Gipson's sole issue.

## VI. CONCLUSION

Having overruled Gipson's sole issue, we affirm the trial court's judgment.


                                        SUE WALKER
                                        JUSTICE

PANEL:  GARDNER, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  May 23, 2013

---

[6]Moreover, because both Gipson and the State at the suppression hearing focused on the issue of whether the initial encounter was a consensual encounter or an investigative detention, the record before us is wholly undeveloped on the issue of the reasonableness of the officers' continued detention of Gipson after she lied.

12