

# NUMBER 13-24-00257-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**ERIC LAMAR ELLIS,**                                                                     **Appellant,**

**v.**

**WESTLAKE GARDENS,**
**TEXAS PARKING AUTHORITY,**
**AND SURE STORAGE LLC,**                                                 **Appellees.**

---

## ON APPEAL FROM COUNTY COURT AT LAW NO. 2
## OF TARRANT COUNTY, TEXAS

---

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Silva**
**Memorandum Opinion by Justice Benavides**

In this case involving a nonconsent tow, the vehicle's owner, Eric Lamar Ellis,

appeals from a take-nothing judgment entered in favor of the property owner, Westlake

Gardens; the towing company, Texas Parking Authority; and the vehicle storage facility,

Sure Storage LLC. In what we construe as a single issue, Ellis contends that Texas Parking Authority lacked probable cause to tow his vehicle because the towing sign in his apartment complex failed to comply with statutory notice requirements.[1] We affirm.

## I. BACKGROUND

Ellis was leasing an apartment at Westlake Gardens when, on August 26, 2023, Texas Parking Authority towed Ellis's vehicle from the property without his consent and delivered the vehicle to a storage facility operated by Sure Storage LLC. The following sign was displayed in the parking lot of the property:



It is undisputed that Ellis did not have a permit displayed on his vehicle at the time it was

---

[1] This case is before this Court on transfer from the Second Court of Appeals in Fort Worth pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer). Because this is a transfer case, we apply the precedent of the Fort Worth Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

towed.

Proceeding pro se, Ellis initiated a tow hearing in the local justice of the peace court. The justice court held a hearing on September 22, 2023, and entered a take-nothing judgment against Ellis based on a finding "that probable cause did exist to tow the vehicle in question."

Ellis appealed that decision to a local county court at law (trial court). Prior to the tow hearing, Ellis filed a bench brief that included the above picture as an exhibit. Ellis also attached several other exhibits, each one depicting a mock-up towing sign. It is unclear whether Ellis created these mock-ups or gathered them from an internet source. Each mock-up used different notice language than the sign in question, and the gist of Ellis's reasoning for including these exhibits was that the language used on the Westlake Gardens sign was comparatively inadequate.

At the tow hearing, Ellis testified that, although he did not have a parking permit, Texas Parking Authority lacked probable cause to tow his vehicle because "the sign was not in accordance with the law." Ellis argued that Westlake Gardens' permit requirement was immaterial to the probable cause question because the sign did not adequately explain which vehicles were authorized to park on the premises in the first instance: "It doesn't say it strictly prohibits my vehicle. . . . It doesn't say residents and visitors only." The trial court asked Ellis if his lease required him to have a parking permit. Ellis said he was unsure and that he did not bring a copy of the lease for reference. Ellis did not call any other witnesses, and appellees did not offer any evidence.

After a discussion with Ellis and appellees' counsel about the contents of the sign

3

and the relevant statutes, the trial court acknowledged that "the sign could be a little more clearly worded" but ultimately concluded that the sign was "clear enough." In explaining its decision, the trial court said, "I think any reasonable person could read that sign and take it to read that if you're a resident or a visitor, you've got to have a permit, and if you don't have a permit, you're going to get towed." The trial court later signed a take-nothing judgment in favor of appellees, and this appeal ensued.

## II.    APPLICABLE LAW & STANDARD OF REVIEW

Vehicle towing is regulated by Chapter 2308 of the Texas Occupations Code, referred to as the Texas Towing and Booting Act (the Act). *See* TEX. OCC. CODE ANN. §§ 2308.001–.505. The Act defines an "unauthorized vehicle" as "a vehicle parked, stored, or located on a parking facility without the consent of the parking facility owner." *Id.* § 2308.002(13). A "parking facility" includes the parking lot of an apartment complex, and a "parking facility owner" includes any individual or entity that owns a parking facility. *See id.* §§ 2308.002(7)(B), (8)(A). Thus, like other parking facility owners, an apartment complex may restrict unauthorized vehicles from parking on its premises. *Id.* § 2308.253(b)(3).

The Act provides that "[a] parking facility owner may, without the consent of the owner or operator of an unauthorized vehicle, cause the vehicle and any property on or in the vehicle to be removed and stored at a vehicle storage facility at the vehicle owner's or operator's expense." *Id.* § 2308.252(a). This authority is conditional, however; the parking facility owner must first post a sign that, among other requirements, "contains a statement describing who may park in the parking facility and prohibiting all others." *See*

4

*id.* §§ 2308.252(a)(1), 2308.301(b)(4). The purpose of this requirement is to provide a vehicle owner or operator with adequate notice. *See id.* § 2308.252(a)(2), (3) (providing other methods for giving "notice" to an owner or operator).

Additionally, upon written confirmation from the parking facility owner that a conforming sign has been posted at the parking facility, "[a] towing company may, without the consent of an owner or operator of an unauthorized vehicle, tow the vehicle to and store the vehicle at a vehicle storage facility at the expense of the owner or operator." *Id.* § 2308.255(a). This authorization is further limited to situations where the parking facility owner has either specifically requested the tow or the towing company has a standing written agreement with the parking facility owner to enforce parking restrictions at the parking facility. *Id.* § 2308.255(d)

A vehicle owner may judicially contest the validity of a nonconsent tow. *Id.* § 2308.452. The operative question in such a hearing is "whether probable cause existed for the removal and placement" of the vehicle. *Id.* The Act does not define "probable cause," *see id.* § 2308.002, but some courts have applied the criminal definition of probable cause, *Brazos Valley Roadrunners, LLC v. Hargrove*, 628 S.W.3d 607, 613 n.6 (Tex. App.—Texarkana 2021, pet. denied) (collecting cases), which turns on an officer's reasonable belief that an offense has been or is being committed. *State v. Ortiz*, 286 S.W.3d 514, 517 (Tex. App.—Corpus Christi–Edinburg 2009, pet. ref'd) (citing *Amores v. State*, 816 S.W.2d 407, 413 (Tex. Crim. App. 1991)). If the court determines that probable cause did exist, then the person who requested the hearing is required to pay the costs of the removal and storage. TEX. OCC. CODE ANN. § 2308.451(a). If the court determines

5

that probable cause did not exist, then the entity that authorized the tow—including a towing company, vehicle storage facility, or parking facility owner—is responsible for those costs. *Id.* § 2308.451(b).

The only issue before us is whether the above sign complied with the Act's notice requirements. A trial court's conclusions of law and statutory interpretation are reviewed de novo. *Yeater v. H-Town Towing LLC*, 605 S.W.3d 729, 732 (Tex. App.—Houston [1st Dist.] 2020, no pet.).

## III.   ANALYSIS

Ellis maintains on appeal that the sign did not comply with the Act's notice requirements because it "provided vague examples of what constituted unauthorized parking for vehicles that contained resident or visitor permits, but it failed to prohibit all other vehicles without resident or visitor permits." We disagree.

The sign begins with a familiar and unmistakable warning: "UNAUTHORIZED VEHICLES WILL BE TOWED AT THE OWNER'S OR OPERATOR'S EXPENSE." *See* TEX. OCC. CODE ANN. § 2308.301(b)(5)(B) (requiring this statement). Immediately following, the sign cautions that, "RESIDENTS AND VISITORS MUST DISPLAY PERMITS." After a series of other directives, the sign explains, "NO EXPIRED RESIDENT STICKERS, NO EXPIRED VISITOR STICKERS." Whether we are interpreting a statute, a contract, or a towing sign, "words are meant to be read in context." *City of Fort Worth v. Pridgen*, 653 S.W.3d 176, 184 n.4 (Tex. 2022) (citation omitted). Reading these words collectively, we agree with the trial court that the plain meaning of the above text is that a person must display a valid parking permit to park in the designated area of Westlake

6

Gardens, and any vehicle without a valid parking permit will be considered unauthorized and subject to a nonconsent tow. *See id.* § 2308.301(a)(4).

Ellis maintains that the mock-up signs he submitted to the trial court are examples of adequate notice language, and the language used on the sign in this case was materially different. For example, one sign reads, "RESIDENT AND VISITOR PARKING ONLY[.] VISITORS MUST PARK IN DESIGNATED VISITOR PARKING SPACES[.] ALL OTHER VEHICLES PROHIBITED[.] UNAUTHORIZED VEHICLES WILL BE TOWED AT OWNER'S OR OPERATOR'S EXPENSE AT ALL TIMES AND DAYS[.]" Ellis argues that the absence of the "all other vehicles prohibited" language from the Westlake Gardens sign rendered it defective.

The trial court considered and rejected Ellis's contention. As the trial court observed, the sign in this case was not an exemplar towing sign, but it did provide Ellis with fair notice. The towing sign informed both visitors and residents such as Ellis that they were required to display a valid parking permit. A "permit" is commonly understood to mean "an official document that allows you to do something." *Permit*, CAMBRIDGE ENGLISH DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/permit (last visited Oct. 15, 2024) (listing a "parking permit" as an example); *see also Permit n.*, BLACK'S LAW DICTIONARY (12th ed. 2024.) ("A certificate evidencing permission; an official written statement that someone has the right to do something."). Thus, if only those vehicles with valid permits were authorized to park at Westlake Gardens, then it naturally follows that all other vehicles were prohibited.

There are many ways to say the same thing in the English language. Perhaps the

7

towing sign in this case could have made its permissions and restrictions even more explicit, but that does not mean that the sign did not adequately inform Ellis of the consequences of parking at Westlake Gardens without a valid permit. Because the towing sign complied with the Act's notice requirement, Ellis's issue is overruled.

## IV. CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Delivered and filed on the
7th day of November, 2024.

8